STEPHENS v DIXON

Docket No. 96429. Argued March 7, 1995 (Calendar No. 11). Decided
     August 10, 1995.

Shirley Stephens brought a negligence action in the Wayne
     Circuit Court against C. J. Dixon, seeking damages for spondy-
     lolysis of the neck, a latent condition associated with prior
     injuries suffered in an automobile accident in which she was a
     passenger in a vehicle owned by Dixon. The court, Sharon
     Tevis Finch, J., granted summary disposition for the defendant,
     finding that the suit was not timely filed and that the facts did
     not serve to extend the statutory limitation period. The Court
     of Appeals, DOCTOROFF, C.J., and CAVANAGH, J. (MURPHY, J.,
     concurring), reversed and remanded for a hearing to determine
     whether to apply the discovery rule (Docket No. 137734). The
     defendant appeals, and the plaintiff cross appeals.

     In a unanimous opinion by Chief Justice BRICKLEY, the
     Supreme Court *held:*

     The discovery rule is not available in a case of ordinary
     negligence in which a plaintiff merely misjudges the severity of
     a known injury. A simple negligence cause of action accrues
     when a prospective plaintiff first knows or reasonably should
     have known of the injury.

     1. The limitation period for ordinary negligence actions is
     three years and begins to run on the date on which the plaintiff
     was harmed by the defendant's negligent act, not the date on
     which the defendant acted negligently. The discovery rule
     balances strict application of the limitation period with when
     the plaintiff learned of an injury, whether the plaintiff was
     given a fair opportunity to bring suit, and whether the defen-
     dant's equitable interests would be unfairly prejudiced by toll-
     ing the statute. However, the discovery rule is not available in
     a case of ordinary negligence where a plaintiff merely mis-
     judges the severity of a known injury; rather, it applies to the
     discovery of an injury, not to the discovery of a later-realized
     consequence of the injury.

     2. In this case, the plaintiff's cause of action accrued on the
     date she was involved in an automobile accident and knew that
     her neck was injured. She had more than ample time within

the limitation period to file suit and did not. It would be unfair to the defendant to be required now to prepare a defense.

3. A cause of action for tortious injury accrues when a legal duty on the part of the defendant toward the plaintiff exists, the duty is breached, a proximate causal relationship between the breach and the injury exists, and the plaintiff has suffered damages. To promote finality and prevent overburdening judicial resources, the discovery of an injury, not the attainment of the threshold status of a serious impairment of body function, commences the running of the statute of limitations.

Reversed.

199 Mich App 73; 500 NW2d 749 (1993) reversed.

*Peter B. Bundarin* for the plaintiff.

*Romain, Donofrio, Kuck & Egerer, P.C.* (by *Pat M. Donofrio* and *Karen L. Hahn*), for the defendant.

BRICKLEY, C.J. After the statutory limitation period had apparently expired, the plaintiff filed a negligence action for injuries suffered in an automobile accident. The circuit court granted summary disposition for the defendant on the ground that the suit was untimely filed, but the Court of Appeals reversed. Because we believe that summary disposition was appropriate, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

This case arises from an automobile accident on the evening of June 23, 1987. Plaintiff Shirley Stephens was a passenger in a vehicle owned by defendant C. J. Dixon. The car was being driven by Mr. Dixon's spouse, Emma J. Dixon, who is now deceased. Ms. Dixon attempted a left turn, but failed to yield the right of way to an oncoming vehicle. The cars collided, and Ms. Stephens was

thrown about the passenger compartment. Her head struck and broke the windshield and also hit the car roof. She came to rest on the floor of the passenger compartment, facing the back of the vehicle, and was unconscious for a time. Ms. Stephens was not hospitalized, though she suffered contusions and abrasions. She experienced muscle pain and stiffness throughout her body, including her neck. These conditions resolved themselves within a period of weeks.

In February 1989, more than twenty months after the original accident, Ms. Stephens began to experience mild neck pain. It increased in severity over the course of several months. In December 1989, she sought medical attention. The condition was diagnosed as spondylolysis of the neck vertebrae at c-4, c-5, and c-6. Ms. Stephens describes spondylolysis as a latent condition associated with prior injuries. On February 23, 1990, Ms. Stephens underwent surgical microdiskectomy to the c-5 and c-6 vertebrae. An anterior cervical diskectomy and fusion at the c-6 and c-7 vertebrae was done on April 30, 1990, to correct a left-side radiculopathy.

On November 20, 1990, nearly forty months after the original accident, the plaintiff filed suit against Mr. Dixon. He responded with a motion for summary disposition, arguing that the suit had been filed after the three-year limitation period of MCL 600.5805(8); MSA 27A.5805(8). The circuit court granted the defendant's motion for summary disposition, explaining simply that the facts of this case did not serve to extend the statutory limitation period.

The plaintiff appealed, and the Court of Appeals reversed the summary disposition. It held that the discovery rule tolls a statute of limitation where a plaintiff alleges a latent injury, but not where a plaintiff misjudges the severity of an injury. The

case was remanded for a hearing at which the plaintiff was to be given the opportunity to persuade the circuit court to apply the discovery rule to these facts. 199 Mich App 73, 79; 500 NW2d 749 (1993). The defendant applied to this Court for leave to appeal, and the plaintiff responded with a conditional application for leave to appeal as cross-appellant. We granted leave to appeal and cross appeal on October 19, 1994. 447 Mich 987.

II

Plaintiff argues that the limitation period for her cause of action ought to be tolled by the discovery rule. Statutes of limitation are procedural devices intended to promote judicial economy and the rights of defendants. For instance, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence. They also prevent plaintiffs from sleeping on their rights; a plaintiff who delays bringing an action profits over an unsuspecting defendant who must prepare a defense long after the event from which the action arose.

In Michigan, the limitation period for ordinary negligence actions such as the case at bar is three years. MCL 600.5805(8); MSA 27A.5805(8). The most complicated problem associated with statutes of limitation, and the problem presented in this case, is that of determining when they begin to run. MCL 600.5805(8); MSA 27A.5805(8) provides that "[t]he claim accrues at the time . . . the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827; MSA 27A.5827. We have held that the term "wrong," as used in the accrual provision, refers to the date on which the plaintiff was

harmed by the defendant's negligent act, not the date on which the defendant acted negligently. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972). Otherwise, a plaintiff's cause of action could be barred before the injury took place.

Another accrual problem associated with statutes of limitation occurs when a plaintiff is injured but is unaware of the injury. If the statute of limitation begins to run at the time of injury, it is possible that plaintiffs with perfectly valid claims could be prevented, through no fault of their own, from bringing their actions within the specified period of limitation. In situations such as these, the common law has developed equitable rules to mitigate the harsh effects of the statute of limitation. One such exception is the discovery rule. The discovery rule, based on principles of fundamental fairness, "was formulated to avoid the harsh results produced by commencing the running of the statute of limitations before a claimant was aware of any basis for an action." *Hammer v Hammer,* 142 Wis 2d 257, 264; 418 NW2d 23 (1987).

We explained the discovery rule in *Chase v Sabin,* 445 Mich 190, 196-197; 516 NW2d 60 (1994). In *Chase,* a 1963 eye operation failed because of an event that occurred during the operation. The plaintiff was not told of the occurrence. In 1988, while pursuing an unrelated worker's compensation claim, the plaintiff's attorney obtained a hospital record of the surgery and learned of the event. We stated:

> Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term

. . . we held that the discovery rule controls the date a pharmaceutical products liability action accrues. "If the three-year period of limitation began to run at the time of the defendant's breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury. Such an interpretation seeks 'to declare the bread stale before it is baked.'" (Citation omitted.)

We note that while the discovery rule serves as an important limit on a mechanical and unjust termination of a legitimate cause of action, there can be equitable problems with the imposition of the discovery rule as well. As one commentator has stated:

While providing equitable relief to plaintiffs otherwise barred by a strict application of the statute of limitations, the discovery rule also threatens legitimate interests of the defendant which the statute protects. While it may be harsh to bar the action of a plaintiff who, through no fault of his own, did not discover his injury until after the running of the statute, it is also unfair . . . to compel a defendant to answer a charge arising out of events in the distant past. The discovery rule tends to undermine the sense of security that the statute of limitations was designed to provide, namely, that at some point a person is entitled to put the past behind him and leave it there. [Olsen, *The discovery rule in New Jersey: Unlimited limitation on the statute of limitations,* 42 Rutgers L R 205, 211-212 (1989).]

Hence, in deciding whether to strictly enforce a period of limitation or impose the discovery rule, we must carefully balance when the plaintiff learned of her injuries, whether she was given a fair opportunity to bring her suit, and whether defendant's equitable interests would be unfairly prejudiced by tolling the statute of limitations.

III

In the present case, the plaintiff proposes that we take a step beyond the rule of *Chase*. There, we held that "the discovery rule governs the accrual date for negligence claims, pursued against hospitals and their agents, which are similar to malpractice claims." *Id.* at 201. By contrast, the present case involves allegations of ordinary negligence.

In *Moll v Abbott Laboratories,* 444 Mich 1, 12-13; 506 NW2d 816 (1993), we noted this Court's adoption of the discovery rule for medical malpractice cases in *Johnson v Caldwell,* 371 Mich 368; 123 NW2d 785 (1963), in negligent misrepresentation cases in *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), and in products liability actions for asbestos-related diseases in *Larson v Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986). In *Moll,* we extended the application of the discovery rule to products liability actions for pharmaceutical products liability actions. Defendant correctly points out that in these contexts, evidentiary records are rarely diminished by the passage of time. Hence, as we stated in *Larson, supra* at 312, quoting *Eagle-Pitcher Industries, Inc v Cox,* 481 So 2d 517, 523 (Fla App, 1985), "the concern for protecting defendants from 'time-flawed evidence, fading memories, lost documents, etc.' is less significant in these cases." That is not the case in automobile tort liability cases, where the evidence for liability defense is often dependent on fading memories of individual witnesses.

We hold that the discovery rule is not available in a case of ordinary negligence where a plaintiff merely misjudges the severity of a known injury. This is a case in which the plaintiff was thrown about the passenger compartment with such force

that her head broke the windshield. Initially rendered unconscious, she awoke to experience pain and stiffness in her neck. Many months after the accident, but still within the limitation period, she again experienced neck pain that increased to the point that medical attention was required. This plaintiff knew more than three years before she filed suit that she had suffered a neck injury as the result of the automobile accident. Indeed, this plaintiff knew or should have known from the day of the accident that a possible cause of action existed for a neck injury resulting from the accident.[1]

A simple negligence cause of action accrues when a prospective plaintiff first knows or reasonably should know he is injured. As we stated in *Connelly:*

> Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred. [388 Mich 151.]

Hence, "[t]he discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Moll,* 444 Mich 18. Plaintiff's cause of action accrued on June 23, 1987, when she was involved in an automobile accident and knew that her neck was injured. Plaintiff had more than ample time within the limitation period to file suit and did not. It

---

[1] The facts of this case do not present a situation in which the plaintiff did not know she was injured at the date of the accident, and we express no opinion about whether the statute of limitations should be tolled in such a case.

would be unfair to defendant to require him to now prepare a defense.

IV

In *Connelly, supra,* we held that a cause of action for tortious injury accrues "when all of the elements of the cause of action have occurred and can be alleged in a proper complaint." *Id.* at 150. We further explained that there are four such elements:

(1) The existence of a legal duty by defendant toward plaintiff.

(2) The breach of such duty.

(3) A proximate causal relationship between the breach of such duty and an injury to the plaintiff.

(4) The plaintiff must have suffered damages. [*Id.*]

Citing *Mielke v Waterman,* 145 Mich App 22; 377 NW2d 328 (1985), plaintiff argues that in automobile negligence actions, there is an additional fifth element that must occur before a cause of action accrues. We reject this argument and reaffirm the rule of *Connelly.*

Michigan's no-fault act establishes an injury threshold for tort liability caused by the ownership, maintenance, or use of a motor vehicle. It provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1); MSA 24.13135(1). In *Mielke,* the Court of Appeals added a fifth element to ordinary negligence suits in the motor vehicle context on the basis of this provision. It reasoned:

Serious impairment of body function is a thresh-
old established by MCL 500.3135; MSA 24.13135
for tort liability caused by ownership, mainte-
nance, or use of a motor vehicle. The serious
impairment of body function is an essential ele-
ment of the plaintiff's cause of action, not merely
a later additional item of damages. In an action
like that presented here, an additional element
must be added to the four essential elements speci-
fied in Connelly for an action for damages arising
out of tortious injury to a person: (5) The plaintiff
must have suffered a serious impairment of body
function. A cause of action for damages for noneco-
nomic losses from a serious impairment of body
function cannot have accrued before the alleged
serious impairment occurred.

* * *

Because plaintiff's cause of action did not accrue
until he could allege all of the essential elements
of the cause of action in a proper complaint,
plaintiff's cause of action did not accrue until he
discovered or should have discovered the serious
impairment of body function. [Mielke at 25-27.
Citations omitted.]

On the basis of Mielke, plaintiff maintains that
her cause of action did not accrue until February,
1989, twenty months after her accident. She ar-
gues that only at this time did her injuries reach
the threshold status of "a serious impairment of
body function." For the reasons provided below, we
reject this "fifth element" argument and reaffirm
the four-element test established in Connelly.

The addition of an injury threshold element in
vehicular, ordinary negligence cases would corrupt
the purposes of the statute of limitation. Potential
defendants of such suits would be denied the ben-
efit of repose, since the rise of an injury to the
threshold level could take many years, even de-
cades. Moreover, the cost in judicial resources
would also increase. In order to promote finality

and prevent overburdening of our judicial resources, we cleave to the general principle that the discovery of an injury, not its attainment of some threshold status, commences the running of the statute of limitation. *Moll,* 444 Mich 19.

In addition, if we were to treat serious impairment of body function as a fifth element in motor .vehicle negligence actions, we would effectively disavow our proper role vis-à-vis the Legislature. It is the duty of this Court to give effect to the intention of the Legislature in passing its enactments. *Wymer v Holmes,* 429 Mich 66, 76; 412 NW2d 213 (1987). It was a specific purpose of the Legislature in enacting the Michigan no-fault act to partially abolish tort remedies for injuries sustained in motor vehicle accidents and to substitute for those remedies an entitlement to first-party insurance benefits. *Shavers v Attorney General,* 402 Mich 554, 578-579; 276 NW2d 72 (1978). This was accomplished by means of the thresholds specified in MCL 500.3135(1); MSA 24.13135(1). Whereas the no-fault act in general and MCL 500.3135; MSA 24.13135 in particular were designed to reduce tort litigation and to promote promptness and certainty of outcome, a "fifth element" analysis would promote tort litigation as well as reduce promptness and certainty of outcome.

V

On these facts, the circuit court properly granted summary disposition. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

LEVIN, CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred with BRICKLEY, C.J.