Barbara L. SMITH, Appellant,

v.

John A. THOMPSON, Appellee.

No. S–5633.

Supreme Court of Alaska.

Sept. 20, 1996.

Thomas S. Gingras, Anchorage, for Appellant.

David S. Carter, Hughes Thorsness Gantz Powell & Brundin, Anchorage, and Earl M. Sutherland, Reed McClure, Seattle, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

### I. FACTS AND PROCEEDINGS [1]

This appeal arises from a November 30, 1987 automobile accident involving Barbara Smith and John Thompson. Smith was heading north on Laurel Street in Anchorage when Thompson, unable to stop his truck while exiting an adjacent parking lot, skidded across the slick pavement and collided with Smith. At the scene Smith stated that she had a severe headache and that her neck hurt. She went to a medical center where she was diagnosed as having a muscle strain.

On December 3, 1987, three days after the accident, Smith initiated a meeting with Thompson's insurance company, State Farm Mutual Automobile Insurance Company (State Farm). According to Smith, "[t]he

---

1. For purposes of this appeal, the superior court's dismissal of Smith's complaint is treated as a grant of summary judgment and consequently the factual allegations contained in Smith's verified complaint and affidavit are taken as true. *Wettanen v. Cowper*, 749 P.2d 362, 363 (Alaska 1988).

State Farm lady said they could not pay us anything until I signed a release." Smith further affied that "[t]he State Farm lady said that after I signed the release I would no longer be eligible for any more medical coverage. She did not disclose that the release might not be any good if my condition changed unexpectedly."

Smith believed at the time that her only injury was a muscle strain and "that it would go away soon." The adjuster offered to settle Smith's claim for about $725. Smith accepted the settlement offer, though she later affied that she "only intended to release claims I had for the neck soreness. I had no intention of releasing the kind of medical problems I developed later." Also, Smith states that she "did not realize ... that a release of the kind I signed may be invalid as to later medical developments."

After Smith signed the release, her pain disappeared and throughout 1988 she had no medical problems. In early 1989 she broke her wrist, which resulted in surgery and the placement of a heavy cast on her left arm. Shortly thereafter, Smith began experiencing shoulder pain and severe headaches, which her doctor attributed to her change in posture because of the heavy cast. Smith's wrist healed slowly, and she required two additional surgeries and needed to wear her cast for almost two years.

Smith became pregnant in June 1990. Though Smith's cast was removed in October 1990, she continued to experience shoulder pain. Her doctors attributed her continuing pain to her pregnancy. After she gave birth, Smith's neck and shoulder pain persisted. She received treatment from a chiropractor who advised her that her pain was caused by the 1987 auto accident. By January 1992, Smith's pain had become unbearable, and a magnetic resonance imaging (MRI) scan indicated that her neck was vertically disarranged. After physical therapy proved unsuccessful, Smith underwent surgery in February 1992 to fuse two vertebrae in her neck. The bone graft between the two vertebrae later collapsed, which necessi-

tated a second surgery. The bone graft from the second fusion also collapsed, and the doctors drilled a halo brace into Smith's head to place her neck in extension and to stabilize it.

In April 1992, approximately four and one half years after her accident, Smith filed suit against Thompson. In August 1992 she affied:

> Until I consulted with an attorney recently, I did not understand that the release which I signed was valid only as to things I intended to release. From what State Farm's adjuster told me and the way she acted, my understanding was that the release I signed would prevent me from bringing a law suit and that I could not make a claim. That's why I did not file suit sooner. In not filing a law suit earlier, I relied upon what the State Farm adjuster told me about the release and what it meant. As soon as I learned she might be wrong, I filed this lawsuit with my lawyer's help.

Thompson[2] raised several affirmative defenses, and the superior court dismissed Smith's claim, without specifying the grounds of dismissal. Smith now appeals.

## II.  STANDARD OF REVIEW

As both parties note, the superior court ruled on Thompson's motion to dismiss as if it had been presented as a motion for summary judgment. Consequently, this court reviews the superior court's order as if it were a summary judgment order. See *McAdoo v. Diaz*, 884 P.2d 1385, 1387 n. 2 (Alaska 1994) ("If the court considered materials outside the pleadings, the motion was automatically converted to a motion for summary judgment."). When reviewing a grant of summary judgment, this court determines whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992). All reasonable inferences of fact from proffered materials are drawn against the moving par-

2.  Thompson, whom State Farm has been unable to locate, is represented *in absentia* by counsel hired by State Farm.

ty—Thompson—and in favor of the non-moving party—Smith. *Id.*

## III. *DISCUSSION*

In asserting that the statute of limitations[3] should not bar her claim, Smith advances two arguments: (1) Thompson should be estopped from asserting the statute of limitations as a defense since Smith detrimentally relied on her mistaken belief, fostered by State Farm, that the release she signed precluded her from suing Thompson; and (2) the statute of limitations should have been tolled until Smith discovered the nature and extent of her latent injury.

### A. *Smith's Estoppel Arguments Fail.*

Smith asserts three related arguments based on principles of estoppel: equitable estoppel, quasi-estoppel, and equitable tolling. All fail. Equitable estoppel does not apply because Smith was not prejudiced by the release, regardless of its validity or the representations made by State Farm concerning its legal effect. Quasi-estoppel does not apply because Thompson has asserted no inconsistent positions. Finally, equitable tolling does not serve to toll the statute of limitations because Smith was not engaged in pursuing her rights in a judicial or quasi-judicial forum.

In *Groseth v. Ness,* 421 P.2d 624 (Alaska 1966), this court adopted "the doctrine of equitable estoppel as a prohibition against an unjust reliance upon a statute of limitations." *Id.* at 630. We stated:

> To establish an equitable estoppel it is generally necessary that the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, *and due to such reliance did not institute suit timely.*

3. A personal injury claim is barred unless it is commenced within two years after the cause of action accrues. AS 09.10.070.

4. This court need not decide an issue unnecessary to the resolution of the case. *See, e.g.,*

*Id.* at 632 n. 23 (emphasis added). Similarly, in *Gudenau & Co., Inc. v. Sweeney Ins., Inc.,* 736 P.2d 763 (Alaska 1987), we stated:

> A plaintiff who is aware of the elements of his cause of action but fails to file suit within the limitations period may still be protected *if he has been induced,* by defendant's words or conduct, *to postpone filing suit until the limitations period has run.* One who induces delay will be equitably estopped from asserting the delay as a bar to plaintiff's action, upon the equitable principle that no party will be permitted to profit from his or her wrongdoing.

*Id.* at 768–769 (emphasis added).

Though the parties expend considerable energy debating whether there was any wrongdoing on the part of the State Farm representative, this issue is moot and we need not consider it.[4] As both *Groseth* and *Gudenau* indicate, a wrongdoing will preclude the assertion of the statute of limitations as a defense only if that wrongdoing actually caused Smith's failure to institute suit.

Smith's accident occurred on November 30, 1987. She had no pain throughout 1988. She only began to experience pain again in early 1989. She attributed the onset of this pain to a heavy cast she wore because of her broken wrist. Smith acknowledges that it was not until the summer of 1991, at the earliest, that she first learned from her chiropractor that she might have a spinal injury resulting from the accident. Until then she and her doctors attributed all pain after the initial month of neck pain immediately following the injury, to factors other than the accident. Even when viewed in the light most favorable to Smith, the facts clearly indicate that she made no association between her pain and the accident until the summer of 1991—three and a half years after the accident, and one and a half years after the statute of limitations had expired.

*Valleys Borough Support Comm. v. Local Boundary Comm'n,* 863 P.2d 232, 235 n. 4 (Alaska 1993) (supreme court need not decide authority issue where party not entitled to relief, even if agency exceeded authority).

Consequently, even assuming the adjuster's conduct and statements constituted a wrongdoing, it is clear that the release had nothing to do with Smith's delay in filing suit. Since she was unaware that the pain she was experiencing may have been attributable to the accident, she would not have brought suit against Thompson even absent the release. In short, regardless of whether the adjuster committed any wrongdoing or misrepresentation, Smith suffered no prejudice.

■ Smith's quasi-estoppel argument can also be dismissed. Quasi-estoppel applies where facts and circumstances make the assertion of an inconsistent position unconscionable. *Wright v. State,* 824 P.2d 718, 721 (Alaska 1992). This argument would succeed only if Thompson was asserting a position inconsistent with one he had previously taken. There is no indication that any of Thompson's positions have been inconsistent.

■ Finally, Smith's equitable tolling argument fails because the requirements of the doctrine are not satisfied.

> The equitable tolling doctrine applies to relieve a plaintiff from the bar of the statute of limitations when he has more than one legal remedy available to him. The statute is equitably tolled if (1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith. The statute is tolled only when the initial remedy is pursued in a judicial or quasi-judicial forum.

*Dayhoff v. Temsco Helicopters,* 772 P.2d 1085, 1087 (Alaska 1989) (citations omitted). Smith was not pursuing an alternative legal remedy in a judicial or quasi-judicial forum when she was negotiating the settlement with State Farm.

Furthermore, even if equitable tolling applied in this case, it would only serve to toll the statute during the time the alternative remedy was being pursued. The tolling of the statute for the few days it took to negotiate and execute the release would have no effect on this case, since the full limitations period would have expired before this suit was filed even if the period had been extended by those days. *See id.* at 1088 n. 6 (Plaintiff is "entitled to the benefit of the full statutory period after the circumstances which justify equitable tolling abate.").

### B.   *The Discovery Rule is Inapplicable.*

■ Smith also claims that the two-year statute of limitations provided for in AS 09.10.070 should be tolled under the discovery rule. The release is not relevant to this issue. The relevant inquiry is whether Smith, after being in an accident and receiving medical attention for injuries sustained in that accident, is required to bring all claims, whether discovered or latent, within two years of the date of that accident.

■ Smith argues that the limitations period was triggered on the date Smith discovered, or reasonably should have discovered, that a latent disease or injury was caused by Thompson's conduct. The statute of limitations ordinarily begins to run on the date on which the plaintiff incurs the injury. However, this rule has been modified so that the statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. "Alaska, along with most other jurisdictions, has adopted the discovery rule...." *Pedersen v. Zielski,* 822 P.2d 903, 906 (Alaska 1991). Under the discovery rule, "the relevant inquiry is the date when [the claimant] reasonably should have known of the facts supporting her cause of action." *Russell v. Municipality of Anchorage,* 743 P.2d 372, 375 (Alaska 1987). "[T]he statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action." *Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288, 291 (Alaska 1988). In this instance, the element which Smith argues was undiscovered for several years is damages.

We have cautioned that "[o]rdinarily summary judgment is inappropriate on the issue of what date the statute should start running." *Mine Safety,* 756 P.2d at 292. We have also stated that "[a]pplication of the discovery rule ... is dependent on facts that

are often unclear. When a plaintiff first learned of an injury or its cause is a fact which may sometimes be in dispute. When a plaintiff first should have learned of an injury or its cause is frequently debatable." *Pedersen*, 822 P.2d at 907. In this case, however, it is undisputed that Smith first knew that she had suffered injury to her neck on November 30, 1987, the date of the accident. Thus the question facing this court is purely a matter of law: Does knowledge of some compensable injury resulting from a sudden traumatic event trigger the statute of limitations even if the full extent of damages is as yet unknown?

We stated in the context of a legal malpractice suit that "the guiding principle is that the statute of limitations commences to run when one is actually damaged as a result of the alleged malpractice, and that the commencement of the statute will not be put off until one learns the full extent of his damages." *Wettanen v. Cowper*, 749 P.2d 362, 365 (Alaska 1988). This rule was extended in *Beesley v. Van Doren*, 873 P.2d 1280 (Alaska 1994), where we rejected the "exhaustion of appeals rule," and stated that the "statute of limitations begins running when a client discovers or reasonably should have discovered all the elements of the cause of action, and suffers actual damages." *Id.* at 1282–83.

It is not only in attorney malpractice actions that the statute of limitations begins to run as soon as all the elements of the cause of action are discovered, even if the extent of damages is not known. The Illinois Supreme Court has said:

> In this case ... the plaintiff knew that she suffered injuries at the time of the accident. She does not contend that her immediate injuries were not compensable.... Thus, the present case involves, not a plaintiff who failed to discover any injury, but a plaintiff who failed to discover the full extent of her injuries before the statute of limitations expired. There is no requirement that a plaintiff must discover the full extent of her injuries before the statute of limitations begins to run. Be-

cause the plaintiff knew or should have known at the time of the accident both that she was injured and that the injury may have been wrongfully caused, the limitations period commenced at that time.

*Golla v. General Motors Corp.*, 167 Ill.2d 353, 212 Ill.Dec. 549, 556, 657 N.E.2d 894, 901 (1995). In *Stephens v. Dixon*, 449 Mich. 531, 536 N.W.2d 755 (1995), the plaintiff was injured in a car accident. At first, she experienced only minor contusions and abrasions, and muscle pain and stiffness throughout her body including her neck. These conditions resolved themselves within weeks. More than twenty months later, she began to feel neck pain. The condition was diagnosed as spondylolysis of the neck vertebrae, a latent condition associated with her injuries. *Id.* 536 N.W.2d at 756. After two surgeries, she filed suit. The Michigan supreme court held that the limitations period began immediately, stating that "the discovery rule is not available in a case of ordinary negligence where a plaintiff merely misjudges the severity of a known injury." *Id.* 536 N.W.2d at 758.[5]

We therefore hold that the statute of limitations on Smith's cause of action began to run on the day of the accident when she first had notice that she had been injured. Her opportunity to file suit expired two years from that date, and hence her current action is time-barred.

## IV. CONCLUSION

Accordingly, the judgment of the superior court is AFFIRMED.

MOORE, C.J., not participating.

---

5. *See also, e.g., Wyatt v. A–Best Co., Inc.*, 910 S.W.2d 851 (Tenn.1995). *Cf.* Restatement (Second) of Judgments § 18 cmt. b, illus. 1 (1982).