Christopher M. SOPKO, Appellant,

v.

DOWELL SCHLUMBERGER, INC.,
and Schlumberger Technology
Corporation, Appellees.

No. S–9354.

Supreme Court of Alaska.

April 27, 2001.

Rehearing Denied June 22, 2001.

Christopher M. Sopko, pro se, Willow, and Darryl Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellant at oral argument.

Daniel A. Gerety and Megan R. Ludwig, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellees.

Before FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Christopher Sopko was allegedly exposed to toxic chemicals while working at a burned-out warehouse owned by Dowell Schlumberger, Inc./Schlumberger Technology Corp. between September 11 and 16, 1990. Sopko had symptoms of toxic exposure as early as September 11, 1990; however, his April 1994 diagnosis of multiple chemical sensitivity was his first diagnosis indicating permanent illness. Sopko brought suit against Schlumberger and its contractor on the warehouse project, Martech USA, in Anchorage Superior Court on April 11, 1996, alleging exposure to toxic chemicals while working on the warehouse project.

Schlumberger filed a motion for summary judgment, claiming that the relevant statute of limitations barred Sopko's claims. The superior court granted Schlumberger's motion and dismissed the claims against Schlumberger. Sopko has appealed this decision. For the reasons stated below, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

Between September 11 and 16, 1990, Sopko was employed to clean up after a fire at a warehouse in Prudhoe Bay owned by Schlumberger; Sopko was hired by Martech, Schlumberger's contractor for clean-up operations. Sopko was not present at the Schlumberger warehouse when the fire occurred; however, the site was still smoldering when Sopko arrived at the site, on September 11, 1990. Even though Sopko was hired for the clean-up work by Martech, Schlumberger was the owner and operator of the warehouse site and had control over the chemicals contained in the warehouse there.

Sopko became sick on the first day of his work at the Schlumberger warehouse, September 11, 1990, with symptoms including coughing, burning eyes, running nose, and "mental confusion." Sometime before September 16, Sopko developed more serious symptoms, including convulsions, vomiting, abdominal pain, bowel incontinence, and a reduction in memory and attention span. Because of these symptoms, Sopko went to a clinic at Prudhoe Bay and was told that there was a "bad cold going around." Also sometime before September 16, Sopko asked for the Material Safety Data Sheets (MSDS) for the chemicals that had been stored at the Schlumberger warehouse. However, a representative for Martech told him that Schlumberger had not yet made the MSDS available.

On September 13 or 14, 1990, Sopko requested that he be evacuated from the site for medical attention. His request was granted on September 16, when Sopko was flown to Anchorage. In Anchorage, on either September 17 or 20, Norman J. Wilder, M.D. diagnosed Sopko as suffering from "toxic fume exposure," but also suggested that mild asthmatic bronchitis and a prior history of respiratory infections may have had a role in Sopko's symptoms. Dr. Wilder saw Sopko again on September 24 and found that Sopko was recovering and had suffered no permanent damage.[1] After September 24, Sopko felt well enough to return to work at the Schlumberger warehouse, but Martech refused to rehire him.

In 1992 Sopko began to suspect that his continuing symptoms were caused by exposure from work that he performed fifteen years earlier as a furniture stripper for Alaska Furniture Manufacturing. While working for Alaska Furniture Manufacturing in 1977, Sopko experienced confusion, eye irritation, nasal congestion, and lightheadedness ("feeling spacy"). In 1992 Sopko talked to another man who had worked at Alaska Furniture Manufacturing in 1977, who claimed that he had a rash similar to one that Sopko had experienced, as well as problems with his

---

1. Dr. Wilder's report is paraphrased in an opinion by the Alaska Workers' Compensation Board concerning Sopko's claims. This opinion states:

 Dr. Wilder diagnosed toxic fume exposure, and noted a "[p]rior history of symptoms suggestive of a mild asthmatic bronchitis ... and aggravated intermittently over the last decade by upper respiratory infections. This may be playing a significant role in the current symptoms." ... On September 24, 1990, Dr. Wilder again saw [Sopko], and found that "[h]e seems to be recovering well from any possible fumes he might have inhaled, and I would see no permanent residual."

heart and nervous system, and that these problems were caused by exposure to solvents in the course of the 1977 furniture stripping work. Sopko inquired at the Workers' Compensation Board as to whether any other workers who had worked in 1977 for Alaska Furniture Manufacturing had had any similar problems. The Board did not provide such information, but it instructed Sopko to file a claim with the Board, which he did on June 8, 1992. The claim filed in 1992 was for permanent partial disability benefits, and it was filed against Alaska Furniture Manufacturing only.[2]

In March 1994, while working at a restaurant in Anchorage, Sopko noticed that he had developed a sensitivity to some chemicals including acetone; Sopko became sick after using a highlighting marker that contained acetone. Sopko's symptoms in March 1994 included extreme pain in his heels that made his work impossible. On April 12, 1994, Sopko was tested by Allergy Testing Services, and was found to be sensitive, or "allergic," to more than twenty-five industrial chemicals. Because these tests indicated sensitivity to chemicals other than the ones involved in the 1977 furniture stripping job, Sopko filed an additional workers' compensation claim. On April 21, 1994, Sopko filed a claim against Martech, asserting that the work at the Schlumberger warehouse caused his sensitivity to the other chemicals. In the claim against Martech, Sopko claimed permanent total disability benefits. Sopko's workers' compensation claims against Alaska Furniture Manufacturing and Martech were consolidated into a single claim.

In September 1995 Sopko saw other doctors, Drs. Aron Wolf and Gene Gustafson. Dr. Gustafson performed a "neuro-psych" exam on Sopko and diagnosed Sopko with "dementia: due to chemical toxicity."

On April 11, 1996, Sopko filed a complaint in Anchorage superior court against Schlum-

berger and Martech. In five separate causes of action, Sopko alleged that Schlumberger and Martech committed fraud and made misrepresentations concerning materials at the job site and intentionally required Sopko to work without notice of toxic materials present there. Sopko also claimed that Schlumberger and Martech were negligent in failing to keep the job site safe and were negligent per se for violation of laws and safety regulations.

Sopko supported his claims with a report issued by Dr. Grace Ziem, who examined Sopko in the fall of 1996. Dr. Ziem diagnosed Sopko with various ailments based on chemical exposure: "toxic encephalopathy, impaired detoxification, numerous and significant immune system impairments, porphyrin metabolism disturbance, and numerous nutritional disturbances." Dr. Ziem expressed the opinion that these conditions were directly caused by exposure on the job in 1990 at the Schlumberger warehouse.

Schlumberger answered the complaint on May 13, 1996, and pleaded ten affirmative defenses, including the statute of limitations.[3]

On April 23, 1999, Schlumberger filed a motion for summary judgment, claiming that Sopko's claims were time barred by the statute of limitations. Schlumberger's motion relied heavily on the report issued by Dr. Ziem. On May 5, 1999, Sopko filed his opposition to Schlumberger's motion for summary judgment.

The superior court held oral argument on the motion for summary judgment on June 11, 1999. At this hearing Sopko confirmed many of the factual statements made in Dr. Ziem's report. However, Sopko also challenged the accuracy of some factual statements in the report and requested the opportunity to "cross-examine" Dr. Ziem, who was not present at the hearing.

---

**2.** In this claim, Sopko alleged that he suffered from "rashes, lumps, tumors, joint stiffness, intestinal disorders, breathing problems, fluctuating blood pressure and an inability to cope with stressful situations in a rational manner." Sopko claimed that these symptoms were caused by an exposure to hazardous chemicals while on the job at Alaska Furniture Manufacturing.

**3.** Martech did not answer the complaint. However, Martech filed for bankruptcy protection on April 29, 1996, and was entitled to an automatic stay from participation in this case.

On June 14, 1999, the superior court granted Schlumberger's motion for summary judgment. On July 30, 1999, the superior court dismissed the claims against Schlumberger. Sopko has appealed from the superior court's grant of summary judgment and subsequent dismissal of this action.

## III. STANDARD OF REVIEW

This is an appeal of summary judgment entered by the superior court, and therefore should be reviewed de novo.[4] We will affirm a summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[5] When making this determination, we will draw all reasonable inferences in favor of the non-moving party.[6]

 We are not bound by the reasoning articulated by the lower court, and we can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the lower court or the parties.[7] Moreover, we will consider any matter appearing in the record, even if not passed upon by the lower court, in defense of the judgment.[8]

## IV. DISCUSSION

A. Schlumberger Is Entitled to Summary Judgment As a Matter of Law.

 In order for the movant to be entitled to summary judgment, the movant must first present a prima facie case for summary judgment: using admissible evidence, the movant must prove "the absence of genuine factual disputes and its entitlement to judgment as a matter of law."[9] The non-moving party may rebut this prima facie case by setting forth specific facts showing that he could produce admissible evidence to demonstrate that a material issue of fact exists.[10]

Sopko makes essentially two arguments to support his claim that Schlumberger is not entitled to summary judgment: (1) Schlumberger has failed to make the necessary prima facie showing with admissible evidence; and (2) the discovery rule prevents summary judgment either as a matter of law or because there are issues of material fact.

1. Schlumberger did make out a prima facie case for summary judgment with admissible evidence.

In order to make out its prima facie case for summary judgment, Schlumberger had to do so with *admissible* evidence.[11] The parties here disagree about the admissibility of the evidence relied upon by Schlumberger.

Sopko claims that the evidence relied upon by Schlumberger is not admissible. Citing *Concerned Citizens v. Kenai Peninsula Borough*,[12] Sopko notes that unsworn and unauthenticated documents are not admissible, and are therefore not competent proof for summary judgment. Sopko claims that Schlumberger, in its motion for summary judgment, relied primarily on the unsworn and unauthenticated, and therefore inadmissible, report of Dr. Grace Ziem, who treated

---

**4.** See *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

**5.** See *id.*; Alaska R. Civ. P. 56(c).

**6.** See *Moore*, 995 P.2d at 233.

**7.** See *id.*; *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

**8.** See *Wright*, 824 P.2d at 720.

**9.** *Preblich v. Zorea*, 996 P.2d 730, 733 (Alaska 2000).

**10.** See *id.*

**11.** See *id.* ("The moving party bears the initial burden of proving, through admissible evidence,

the absence of genuine factual disputes and its entitlement to judgment as a matter of law.").

**12.** 527 P.2d 447 (Alaska 1974). In *Concerned Citizens*, we held:

A party seeking summary judgment under Civil Rule 56 has the burden of showing both that the case presents no material issue of fact requiring the taking of testimony and that applicable law requires judgment in its favor. This burden must be discharged by submission of material admissible as evidence.... [U]nauthenticated and unsworn documents ... are not admissible in evidence and cannot be relied upon for the purposes of summary judgment.

*Id.* at 450 (citations omitted).

Sopko and diagnosed him with various maladies in 1996.

 As an initial matter, any statements by Sopko to Dr. Ziem are not hearsay as they are admissions by Sopko and fall within the scope of Alaska Rule of Evidence 801(d)(2)(A).[13] Second, no party disputes the authenticity of the Ziem report; Sopko does not claim that the report relied on by Schlumberger was not actually written by Dr. Ziem. In fact, Sopko cited to Ziem's report himself to support his own factual claims on appeal. Therefore, Sopko cannot now claim that the Ziem report was not authentic and therefore inadmissible.

 Sopko has also waived his argument that the Ziem report was unsworn and therefore inadmissible. Sopko failed to object on this basis at the summary judgment hearing. Also, as noted, Sopko confirmed the relevant factual statements at the summary judgment hearing and relied on many of them in his opposition to summary judgment. Thus, if the superior court committed any error by allowing Schlumberger to rely on the unsworn Ziem report, the error was harmless. Therefore, Schlumberger properly presented admissible evidence in support of its motion for summary judgment.

2. *The discovery rule does not require that the grant of summary judgment be reversed.*

 The central controversy in this case concerns the application of the discovery rule, a rule that we adopted in the context of the limitations period for tort suits. The discovery rule tolls the usual two-year statute of limitations[14] and prevents the limitations period from starting to run until the plaintiff discovers, or reasonably should discover, the existence of all elements of his cause of action.[15] We adopted the discovery rule to protect plaintiffs from losing their cause of action when they have an injury that remained undiscovered or reasonably undiscoverable for longer than the limitations period.[16] It also protects plaintiffs whose injury is known but the cause is not reasonably discoverable during the limitations period.[17]

The incident giving rise to this lawsuit occurred between September 11 and 16, 1990. Sopko did not file suit until April 11, 1996. The applicable limitations period, defined by AS 09.10.070, is two years.[18] The discovery rule bars Sopko's claim unless his cause of action "accrued" on or after April 11, 1994.[19] Under the terms of the discovery rule, Sopko's claim accrued before this date if Sopko discovered, or reasonably should have discovered, the existence of all of the elements of his cause of action before April 11, 1994.[20]

Sopko claims that he did not discover all of the elements of his cause of action until at least September 1995, and that he reasonably should not have been able to discover all of these elements until that time. Specifically, Sopko claims that he did not know that he had a permanent injury caused by the defendant's conduct until at least September 1995, when he was first diagnosed with a permanent condition based on the chemical exposure that had apparently taken place in 1990 at the Schlumberger warehouse. Also, Sopko implicitly claims that he could not reasonably have known of these elements until September 1995, because the doctors that he saw

---

13. Alaska Rule of Evidence 801(d) provides:
 A statement is not hearsay if
 . . . .
 (2) *Admission by Party Opponent.* The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.

14. *See* AS 09.10.070 (creating two-year limitations period for tort actions).

15. *See Pedersen v. Zielski,* 822 P.2d 903, 906 (Alaska 1991).

16. *See id.* at 907.

17. *See id.*

18. AS 09.10.070 establishes the two-year statute of limitations for tort actions: "Except as otherwise provided by law, a person may not bring an action . . . for personal injury or death . . . unless the action is commenced within two years of the accrual of the cause of action."

19. Sopko filed suit on April 11, 1996.

20. *See Smith v. Thompson,* 923 P.2d 101, 105 (Alaska 1996) (stating rule); *Breck v. Moore,* 910 P.2d 599, 604 (Alaska 1996).

before September 1995 did not diagnose him with a permanent injury from chemical exposure, and because Schlumberger kept from him, until June 1994, the MSDS that would have shown him the connection between his injuries and the chemical exposure.

▉▉▉ Under the discovery rule, a plaintiff's claim accrues at the time that he discovers, or reasonably should discover, all of the elements of his cause of action.[21] The plaintiff "reasonably should have discovered" all of the elements of his cause of action at the point at which the plaintiff "has sufficient information to prompt an inquiry into the cause of action, if all of the essential elements of the cause of action may reasonably be discovered within the statutory period at a point when a reasonable time remains within which to file suit."[22]

Under this standard, the undisputed facts in the record indicate that Sopko should have discovered both his injury and its causation on September 20, 1990—long before the April 11, 1994 date required to preserve Sopko's claim. On his first day of work at the Schlumberger warehouse, September 11, 1990, Sopko became sick, experiencing symptoms including coughing, burning eyes, running nose, and mental confusion. By September 16, Sopko's symptoms had become more serious, including convulsions, vomiting, abdominal pain, incontinence, and a reduction in memory and attention span. Sopko sought treatment for these symptoms at a Prudhoe Bay clinic and requested evacuation from the site for medical attention. His request was granted on September 16, when Sopko was flown to Anchorage. On September 17 or 20, Sopko was diagnosed by Dr. Wilder as suffering from "toxic fume exposure."

▉ By September 20, 1990, Sopko had sufficient information to prompt an inquiry into his cause of action. Dr. Wilder's diagnosis of "toxic fume exposure" and the severe symptoms that Sopko experienced while on the job at the Schlumberger warehouse and immediately afterward constituted sufficient information for Sopko to prompt an inquiry into his cause of action. As we held in *Cameron v. State,* under the discovery rule an injured plaintiff has sufficient information to prompt an inquiry into his cause of action once the plaintiff learns that he has a "medically documented ... condition."[23]

▉ Sopko argues that his case should be viewed and analyzed as a toxic tort case. In toxic tort cases, such as cases where the plaintiff contracts silicosis or asbestosis from exposure to silicate dust or asbestos fibers, under the discovery rule the statute of limitations will generally not start running until the plaintiff's disease manifests itself in an illness. In such cases, the plaintiff initially does not have any symptoms of injury, and therefore has insufficient information to prompt an inquiry into his cause of action.[24] The undisputed facts indicate that Sopko did not suffer from this type of "latent injury." Instead, between September 11 and 20, 1990, Sopko suffered severe symptoms of injury and was diagnosed with "toxic fume exposure." And the undisputed facts indicate that these symptoms were ongoing. In 1992 Sopko complained of various ongoing chronic health conditions in a claim with the Alaska Workers' Compensation Board. In this June 8, 1992 claim, Sopko complained of "rashes, lumps, tumors, joint stiffness, intestinal disorders, breathing problems, fluctuating blood pressure, and an inability to cope with stressful situations in a rational manner." Therefore, the undisputed facts indicate that Sopko had sufficient information on September 20, 1990 to prompt an inquiry into his cause of action. And, as we have required in the past, all of the essential elements of Sopko's cause

---

**21.** *See Pedersen v. Zielski,* 822 P.2d 903, 907 (Alaska 1991).

**22.** *Cameron v. State,* 822 P.2d 1362, 1366 (Alaska 1992).

**23.** 822 P.2d 1362, 1367 (Alaska 1992). In *Cameron,* the plaintiff contracted occupational asthma digging tunnels, and we held that there was "sufficient information" to begin an inquiry once the plaintiff learned that he had a "medically documented lung condition."

**24.** *See Urie v. Thompson,* 337 U.S. 163, 170–71, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Clutter v. Johns–Manville Sales Corp.,* 646 F.2d 1151, 1157–58 (6th Cir.1981) (applying Ohio law); *Bendix Corp. v. Stagg,* 486 A.2d 1150, 1152–53 (Del.1984).

of action could have been discerned within the limitations period, with reasonable time remaining to file suit.[25] As of June 8, 1992, Sopko by his own admission had many symptoms of injury and chemical exposure, which he complained of before the Alaska Workers' Compensation Board. And on June 8, 1992, Sopko still had more than three months to file suit before the limitations period ran out on September 20, 1992.

Also, as we held in *Smith v. Thompson*[26] and *Wettanen v. Cowper*,[27] under the discovery rule it is irrelevant if the full scope of injury is not known immediately. Sopko had "sufficient information" to start an inquiry into his cause of action in 1990 even though the full extent of his injury was not revealed until 1995, when Sopko was diagnosed with permanent "dementia" caused by toxic exposure.[28] In *Smith*, the plaintiff was involved in an auto accident, and did not discover the serious nature of her injuries (and file suit against the other driver) until four and one-half years after the accident.[29] At the time of the accident the plaintiff's neck and head were sore, and she was diagnosed with a "muscle strain." However, four and one-half years later, she developed serious neck problems that necessitated two surgeries and the installation of a head brace. In *Smith*, we held that the plaintiff's suit was time barred because the plaintiff knew or should have known that she had *some* injury at the time of the accident, even if the injury's full extent was then unknown.[30] In *Wettanen*, an attorney malpractice case, we held that the statute of limitations began to run when the attorney committed the harm by negligently failing to prepare for or appear at his client's trial.[31] In *Wettanen* we noted that "commencement of the statute [of limitations] will not be put off until one learns the full extent of his damages."[32] Similarly, Sopko had sufficient knowledge on September 20, 1990 to prompt an inquiry into his cause of action, and it is irrelevant that the full extent of his injuries did not become apparent until later.

Indeed, by his own admission, Sopko did not make any kind of inquiry at all following the September 1990 diagnosis—he "pretty much forgot about it." Therefore, by September 20, 1990, Sopko reasonably should have discovered all of the elements of his cause of action, and under the discovery rule his claim is time barred.

### B. The Superior Court Made No Other Errors That Would Mandate Reversal.

Sopko alleges two procedural errors by the superior court: (1) that the superior court erred in failing to grant Sopko's motion for extra time for discovery; and (2) that the superior court erred in failing to properly advise and protect Sopko as a pro se litigant. However, neither of these actions constitutes error nor changes the outcome of this case.

### 1. The superior court did not err in refusing to grant Sopko extra time for discovery.

On the day of the summary judgment hearing (June 11, 1999), Sopko made a motion under Alaska Civil Rule 56(f)[33] to request additional time for discovery, in order to "marshal the evidence needed to ward off summary judgment." The superior court

---

**25.** *See Cameron*, 822 P.2d at 1366.

**26.** 923 P.2d 101 (Alaska 1996).

**27.** 749 P.2d 362 (Alaska 1988).

**28.** Sopko also experienced severe symptoms during September 1990. These included coughing, burning eyes, running nose, and "mental confusion" (on September 11, 1990) and convulsions, vomiting, abdominal pain, bowel incontinence, and a reduction in memory and attention span (sometime between September 11 and 16, 1990).

**29.** 923 P.2d at 103.

**30.** *Id.* at 105–06.

**31.** 749 P.2d 362.

**32.** *Wettanen*, 749 P.2d at 365.

**33.** Rule 56(f) relates to summary judgment motions when affidavits are unavailable:

Should it appear·from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

never ruled on the motion, and granted summary judgment for Schlumberger three days later, on June 14, 1999. In granting summary judgment, the court implicitly denied Sopko's motion. Sopko claims that it was "error" to deny the Rule 56(f) motion, and that this error "amplifies" the court's other errors in this case. We review the denial of a Rule 56(f) motion for abuse of discretion.[34]

We have previously set forth the standard for Rule 56(f) motions:

> A party opposing a motion for summary judgment is entitled to conduct discovery germane to its opposition. Where the party has not been dilatory in seeking discovery and identifies those people whom it intends to depose, it should be granted an extension under Civil Rule 56(f) to conduct discovery.[35]

The record indicates that, in his Rule 56(f) motion, Sopko only sought additional MSDS materials and an affidavit or deposition of Dr. Ziem. However, Schlumberger provided Sopko with all of the MSDS materials in June 1994, and the Alaska Workers' Compensation Board gave Sopko access to Martech's files related to toxic chemicals and employee exposure in March 1998. And Dr. Ziem had been Sopko's doctor since the fall of 1996; Sopko had had more than adequate time to depose her. Therefore, it cannot be said that denial of Sopko's Rule 56(f) motion was an abuse of discretion.

2. *The superior court did not err by failing to adequately warn Sopko of the danger of summary judgment and advise him as to the procedures involved.*

Sopko also argues that, because he appeared as a pro se party below and had some apparent medical problems, he "did not know what he was doing" during the summary judgment hearing and was entitled to special assistance from the superior court.

We have imposed some limited duties on courts to advise pro se litigants of proper procedure. These duties include the duty to inform pro se litigants (1) of specific procedural defects in their pleadings,[36] and (2) of the necessity of opposing a summary judgment motion with affidavits or by amending the complaint.[37]

The superior court did not violate any of its duties to Sopko as a pro se litigant. The superior court did more than just advise Sopko of procedure; the court attempted to focus Sopko's attention on the relevant issues at the hearing.[38] We cannot say that the superior court's failure to do more than this constituted an abuse of discretion.

## V. CONCLUSION

Because Schlumberger was entitled to summary judgment as a matter of law, and there were no issues of fact that would preclude summary judgment, and because the superior court made no errors that would preclude summary judgment, we AFFIRM the decision of the superior court below.

EASTAUGH, Justice, not participating.

---

34. *See Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1147 n. 12 (Alaska 1999).

35. *Demmert v. Kootznoowoo, Inc.*, 960 P.2d 606, 612 (Alaska 1998).

36. *See Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998) ("[W]e conclude that the superior court must inform a pro se litigant of the specific defects in his notice of appeal and give him an opportunity to remedy those defects.").

37. *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("[W]e believe the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."); *see also Ahwinona v. State*, 922 P.2d 884, 888–89 (Alaska 1996) (Rabinowitz, J., concurring). *But see Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) ("We decline to ... require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading.").

38. Specifically, the court below attempted to convey the relevance of the discovery rule and its application and distinguish it from the merits of Sopko's tort claims.