SHAW v MARTIN

Docket No. 86197. Submitted June 25, 1986, at Grand Rapids. Decided
October 6, 1986. Leave to appeal applied for.

Plaintiff, Mark A. Shaw, filed suit in the Kalamazoo Circuit Court
against defendants, Timothy Martin, Leonard Rands and Philip
Everett. Plaintiff alleged that, as a result of an automobile
accident involving the defendants, he sustained injuries to his
right knee and muscles in his back, and suffers from loss of
memory, as a result of trauma to his head, and much pain. The
trial court, Richard R. Lamb, J., subsequently denied a motion
for summary judgment brought by defendant Everett who
contended that plaintiff's injuries did not constitute serious
impairment of body function or permanent serious disfigure-
ment for purposes of the no-fault act. Defendant Everett's
application for leave to file an interlocutory appeal was granted
by the Court of Appeals.

The Court of Appeals *held:*

1. Where there is no material factual dispute as to the nature
and extent of a plaintiff's injuries, courts are to decide as a
matter of law whether there has been a serious impairment of
body function under the no-fault act.

2. In this case, a dispute exists between the parties and the
doctors who examined the plaintiff as to the nature and extent
of plaintiff's head and back injuries. Therefore, the determina-
tion of serious impairment of body function regarding plaintiff's
alleged loss of memory must be made by the jury, and the trial
judge properly denied defendant's motion for summary judg-
ment.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS
IMPAIRMENT OF BODY FUNCTION.

Whether an injury is a serious impairment of body function

REFERENCES

Am Jur 2d, Automobile Insurance §§ 348 *et seq.,* 357 *et seq.*

What constitutes sufficiently serious personal injury, disability,
impairment, or the like to justify recovery of damages outside of
no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" insurance plans. 42 ALR3d
229.

under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of statutory construction to be decided by the trial court, where there is no factual dispute regarding the nature and extent of a plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

   Whether an injury results in a serious impairment of body function, for purposes of the no-fault act, must be decided on a case-by-case basis, and in order to be considered a serious impairment of body function, the impairment must be of an important body function and the injuries must be objectively manifested (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

   A court should apply an objective standard and look to the effect of the injury on the individual's general ability to lead a normal life when determining whether a certain injury meets the threshold requirement of the no-fault act for recovery of noneconomic loss; recovery for pain and suffering cannot be predicated on serious pain and suffering, but on injuries that affect the functioning of the body (MCL 500.3135; MSA 24.13135).

*John J. Conlon,* for plaintiff.

*Early, Lennon, Peters & Crocker* (by *J. Richardson Johnson*), for defendant.

Before: R. B. BURNS, P.J., and R. M. MAHER and F. D. BROUILLETTE,* JJ.

R. B. BURNS, P.J. Defendant Everett appeals by leave granted from a June 21, 1985, order of the circuit court denying his motion for summary judgment in which he claimed plaintiff's injuries did not constitute serious impairment of body function or permanent serious disfigurement under Michigan's no-fault insurance act, MCL 500.3135; MSA 24.13135.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff was standing on the shoulder of the road in front of defendant Martin's automobile, which had stalled. Defendant Everett's car approached the scene and struck Martin's vehicle. The collision caused the Martin car to strike plaintiff, causing his injuries. The first thing plaintiff remembered after coming to was standing in the road and then being taken to Franklin Community Hospital in Vicksburg, where he was treated and released that morning. X-rays revealed no broken bones. At his deposition, plaintiff did not remember much about the accident, complaining of memory loss as a result of the accident. In his complaint, plaintiff alleged he was catapulted through the air a distance of approximately twenty-five to thirty feet and crashed into the ground. At plaintiff's deposition, he testified that he suffered a banged-up right knee, torn muscles in his back, loss of memory, and much pain. He also received a large cut on his forehead, which required thirty-two stitches, and a cut on his left forearm, which required nine stitches.

Approximately one week after the accident, plaintiff saw Leo B. Rasmussen, M.D., at the suggestion of the hospital and was still complaining of his injuries. Dr. Rasmussen recommended that plaintiff see a physical therapist and a neuropsychologist, Dr. Thomas R. VanDenAbell. Subsequently, he was sent to Detroit to be examined by Dr. S. E. Newman. After the lawsuit was filed, defendant arranged to have plaintiff examined by two doctors, Dr. Leslie A. Neuman and Dr. Paul C. Kingsley, and another psychiatrist, John T. Gallagher.

At the time of the accident, plaintiff was employed as a prototype technician and troubleshooter at Triple S Company, a manufacturer of plastic parts for computers. His job involved in-

specting new tools and molds and testing them to make sure they met specifications before they went into mass production. He testified that he missed approximately four months of work after the accident.

On appeal, Everett claims (1) the trial court erred in denying his motion for summary judgment in which he alleged that plaintiff did not suffer serious impairment of body function and (2) plaintiff's scar does not constitute permanent serious disfigurement.

Michigan's no-fault insurance law was enacted for the purpose of providing the victims of motor-vehicle accidents adequate and prompt reparation for loss, and to reduce the number of tort claims resulting from automobile accidents, which often overcompensated minor injuries and undercompensated serious injuries. *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978). Thus, tort liability will be imposed only in limited circumstances as expressed in MCL 500.3135(1); MSA 24.13135(1):

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." [*Id.*]

Where there is no material factual dispute as to the nature and extent of a plaintiff's injuries, courts are to decide as a matter of law whether there has been a serious impairment of body function under Michigan's no-fault act. *Cassidy v McGovern,* 415 Mich 483, 488; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983).

Serious impairment of body function must be

determined on a case-by-case basis. *Cassidy, supra,* p 503; *Williams v Payne,* 131 Mich App 403, 409; 346 NW2d 564 (1984). Nevertheless, some guidelines have been established. The affected body function must be an important body function. The injury just be objectively manifested. The impairment must be serious. *Cassidy, supra,* pp 504-505; *Williams, supra,* p 409. The seriousness is to be measured by an objective standard which looks to the effects of the injury on a person's general ability to lead a normal life. *Cassidy, supra,* p 505. The injury need not be permanent to be serious, but permanency is relevant. *Cassidy, supra,* pp 505-506; *Guerrero v Schoolmeester,* 135 Mich App 742, 747; 356 NW2d 251 (1984), lv den 422 Mich 881 (1985). Objective manifestation is not satisfied by plaintiff's complaint of symptoms, rather, the injury itself must be objectively manifested. This Court has interpreted this to mean that the injury must be capable of medical measurement. *Williams, supra,* p 409. Medically unsubstantiated pain will always be present in a tort action for pain and suffering. *Williams, supra,* p 410. Pain and suffering is not recoverable per se, but only when it arises out of an injury that affects the functioning of the body. *Cassidy, supra,* p 505; *Guerrero, supra,* p 747. A claim of serious impairment must be considered in light of the other two requirements of the statute—death and permanent serious disfigurement. *Cassidy, supra,* p 503.

In plaintiff's brief on appeal, plaintiff states he suffers from sixteen basic complaints as a result of the accident. We will discuss three of his complaints.

The first complaints to be analyzed are plaintiff's headaches and loss of memory. We believe that these two complaints should be analyzed together since they obviously both arose when plaintiff's

head hit the pavement. We further believe that memory is an important body function. Memory is a body function which people use in their everyday life. Memory is essential to a person's performance at work. Memory is also important in social situations such as meeting people, conversing, engaging in hobbies and recreation, and reminiscing with friends.

The impairment to plaintiff's memory in the instant case was serious. Plaintiff testified at his deposition that, before the accident, he had an excellent memory. After the accident he could not perform like he used to be able to at work. He could not remember parts, molds, and the proper way to start jobs. He constantly had to ask people. He was always confused, he was reassigned to third shift and, in addition, he could not remember past events in his life, and could not converse with people about these past events. This infirmity interferes with a person's ability to live a normal life. The crucial question is whether this complaint arose out of an objectively manifested injury.

Plaintiff was examined by Thomas R. VanDen-Abell, Ph.D., a clinical neuropsychologist. Dr. VanDenAbell performed a number of tests on plaintiff. Plaintiff had difficulty with tests assessing his ability to inspect complex displays in the Picture Completion Test. In the Bushke Auditory Verbal Learning Paradigm, which tested plaintiff's verbal memory skills, plaintiff's performance was at the lower level of normal, but the pattern of his errors suggested the effects of some psychodynamic interference with his abilities.[1] The Ray Complex Figure test measured plaintiff's nonverbal memory.

[1] Psychodynamics is the study of the mental and emotional processes underlying human behavior and its motivation, especially as developed unconsciously in response to environmental influences. Webster's New World Dictionary, 2d ed, p 1147.

His performance was described as normal, although he could retrieve only sixty percent of the design. Dr. VanDenAbell suggested that this pattern of performance suggests some left hemisphere lateralization of plaintiff's memory defect. On other tests not involving memory, plaintiff performed normally. In summary, Dr. VanDenAbell stated that plaintiff showed minimal but consistent evidence of higher cortical dysfunction[2] which he felt was due to plaintiff's head injury.

Whether plaintiff's complaints of memory loss result from an objectively manifested injury is a close question, however. We believe that Dr. VanDenAbell's report indicates that plaintiff's head injury was objectively manifested. Taking the evidence in a light most favorable to plaintiff, plaintiff's head injury was objectively manifested and plaintiff's memory loss was due to this injury. Dr. VanDenAbell also signed an affidavit in support of plaintiff's claims. In the affidavit, Dr. VanDenAbell further states that he feels plaintiff will experience permanent residual memory difficulties and permanent cognitive difficulties. Dr. Neuman, defendant's doctor, stated that he could find no objective evidence of why plaintiff was making the complaints.

There is a dispute between the parties and their doctors as to the nature and extent of plaintiff's head injury. Plaintiff's neuropsychologist believes plaintiff's injury was objectively manifested by his tests, while the doctors employed by defendant do not. Therefore, the determination of serious impairment of body function regarding plaintiff's complaint of loss of memory must be made by the jury in this case, and the trial judge properly denied defendant's motion for summary judgment on this basis.

---

[2] The impairment or abnormality of the outer portion of the brain.

The next complaint which must be analyzed is plaintiff's complaint of back problems. Plaintiff complains of muscle popping, limited flexion, and pain. This Court has held that movement of one's back is an important body function. *Sherrell v Bugaski,* 140 Mich App 708, 711; 364 NW2d 684 (1984). The next step is determining whether there was evidence that plaintiff's back injury was objectively manifested and whether his complaints arise out of that objectively manifested injury.

Dr. Rasmussen, in his report of September 22, 1981, stated that on June 19, 1981, plaintiff came into his office complaining that he was unable to bend back at all, and complaining of pain in his back. Dr. Rasmussen, upon examination, found tenderness over the low thoracic spine[3] and decreased range of motion when plaintiff bent backwards. However, x-rays of the thoracic spine were normal. On June 25, 1981, Dr. Rasmussen still found tenderness. X-rays taken on that date revealed transitional vertebrae with small associated spina bifida occulta. However, at Dr. Neuman's deposition, he testified that this was congenital and not related to the accident. Plaintiff does not challenge this; thus, this infirmity cannot be taken into account by this Court. On July 24, 1981, after plaintiff still complained of pain and discomfort, Dr. Rasmussen diagnosed muscle spasms over the superior left scapula (shoulder blade).

In *Salim v Shepler,* 142 Mich App 145; 369 NW2d 282 (1985), a panel of this Court held that limited flexion is objectively manifested if diagnosed by a passive range of motion test, but not if it is diagnosed by an active range of motion test. An active test is plaintiff's merely stating that he cannot bend.

---

[3] The middle part of the spine.

Dr. Rasmussen's report does not state whether he used a passive or an active test in diagnosing plaintiff's limited flexion. Since it is plaintiff's responsibility to present his claim in the best manner, this Court must assume the limited flexion was not objectively manifested. On the whole, we do not believe that Dr. Rasmussen's report sufficiently indicates that plaintiff's back injury was objectively manifested.

However, plaintiff was examined by S. E. Newman, M.D., on March 19, 1985. In Dr. Newman's examination of plaintiff's spine, he noted that, in the cervical spine area, plaintiff had flexion of eighty, normal being ninety. Such limited motion is objectively manifested, as it appears Dr. Newman used a passive test since he found the exact percentage of flexion. In addition, the x-rays Dr. Newman took revealed reversal of the normal cervical lordotic curve,[4] and revealed structural change at the lumbosacral joint, the area of the spine around the loins. This is also an objective manifestation. Thus, according to Dr. Newman, plaintiff's back injury was objectively manifested. Besides that, Dr. Newman noted tenderness, pain and scars around the neck, spine and scapulae.

Under "diagnosis," Dr. Newman diagnosed plaintiff as having (1) traumatic craniocervical syndrome[5] manifested by cephalgia (headache) and memory loss, (2) traumatic myofascial sprain of the cervical spine musculature with left scapulo-costal components[6] comfirmed by x-ray, (3) traumatic myofascial sprain of the lumbosacral spine

---

[4] The reversal of the normal curve of the spine near the neck.

[5] Symptoms in the skull and neck caused by a severe blow to the head.

[6] Sprain of the membranes surrounding the muscles of the neck, spine and shoulder blades.

musculature[7] in a structurally weak back, and (4) traumatic arthralgias[8] with sensory phenomena involving the hands and right knee.

Defendant's orthopedic surgeon, Dr. Kingsley, wrote a letter to defendant's attorney regarding plaintiff on October 22, 1984. In the letter, Dr. Kingsley states that, in his October 12, 1984, examination of plaintiff, he found plaintiff's spine to be normal, with no evidence of deformity or muscle spasm. An x-ray of the spine revealed only the congenital problem of spina bifida occulta. At the end of Dr. Kingsley's report, he states that his examination failed to reveal any significant objective findings to substantiate plaintiff's complaints.

Once again, there is a dispute between the parties' doctors as to the nature and extent of plaintiff's injuries. Therefore, if the impairment is serious, summary disposition for defendant was not proper.

In our opinion, the other complaints of plaintiff do not merit consideration.

Affirmed. Costs to plaintiff.

[7] Sprain of the membranes surrounding the lower spine.
[8] Pain in the joints.