# STATE OF MICHIGAN

# COURT OF APPEALS

MOUSA HAWAMDA and RANIA HIJAZI,

UNPUBLISHED
April 25, 2017

Plaintiffs-Appellants,

v

No. 330374
Oakland Circuit Court
LC No. 2014-140681-NI

KHALID KINEISH and PROGRESSIVE
MICHIGAN INSURANCE COMPANY,

Defendants-Appellees.

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In this action for third-party no-fault benefits under MCL 500.3135, plaintiffs Mousa Hawamda and Rania Hijazi appeal the trial court's July 29, 2015 order granting defendant Khalid Kineish (Kineish) summary disposition pursuant to MCR 2.116(C)(10), and November 3, 2015 order granting summary disposition to defendant Progressive Michigan Insurance Company (Progressive) pursuant to MCR 2.116(C)(7) and (10). For the reasons stated in this opinion, we reverse the trial court's orders and remand for further proceedings.

## I. BACKGROUND

This case arises from a motor vehicle accident that took place on May 9, 2011, in the City of Bingham Farms. Plaintiff Mousa Hawamda (Hawamda) was driving southbound on Telegraph Road when he was struck by defendant Kineish whose vehicle "entered the wrong turnaround on Telegraph Road," "failed to yield to oncoming traffic," drove in front of Hawamda's vehicle, and caused a collision. Kineish does not dispute these facts. Hawamda, with his wife plaintiff Rania Hijazi, filed a three-count complaint on May 9, 2014, against Kineish and defendant Progressive jointly and severally, alleging claims of negligence, underinsured motorist coverage, and loss of consortium resulting from the May 9, 2011 motor vehicle accident. Both defendants answered the complaint and discovery ensued. Motions for summary disposition followed.

Kineish filed for summary disposition under MCR 2.116(C)(10). Kineish argued that summary disposition was appropriate because plaintiffs could not show that Hawamda suffered "a serious impairment, to wit, an objectively manifested injury or impairment" "that affects his general ability to lead his normal life" as required under MCL 500.3135, because all objective testing of Hawamda's head, spine and shoulder were negative for injury. Plaintiffs' response

-1-

argued that Hawamda's MRIs, showing disc bulges in his lumbar and cervical spine, were objective evidence of his complaints of continued back and neck pain. After a hearing on the motion, the trial court granted summary disposition to Kineish. The court held that the evidence submitted by plaintiffs did not establish that Hawamda suffered injuries caused by the accident. The court reviewed MRIs of Hawamda's brain taken directly after the accident that showed his brain to be normal. The court also considered the MRIs of Hawamda's spine but noted that the images were taken a year after the accident. It found that Hawamda's complaints of pain were subjective. The court held that plaintiffs failed to establish a genuine issue of material fact regarding whether the injuries complained of were linked to the motor vehicle accident. Plaintiffs filed for reconsideration and were denied.[1]

Two months later, Progressive filed for summary disposition under MCR 2.116(C)(7) and (C)(10). Progressive argued that the trial court correctly found previously, in deciding Kineish's motion for summary disposition, that Hawamda did not show an objective manifestation of any injury. Progressive asserted that "[t]he effect of [the trial court's] granting of Defendant Kineish's Motion for Summary Disposition was that it also eliminated any possibility for Underinsured Motorist coverage as no payment can ever be made under the bodily injury liability policy." At the hearing on Progressive's motion, plaintiffs continued to argue that the trial court's previous decision in favor or Kineish was error. The court decided that since it already ruled on serious impairment issues, there was no need for a trial regarding the underinsured motorist claim, and dismissed plaintiffs' case against Progressive. Plaintiffs did not seek reconsideration of that order.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004).

Dismissal of an action pursuant to MCR 2.116(C)(7) is appropriate when the claim has otherwise been disposed of before commencement of the action.

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development

---

[1] After the trial court granted summary disposition to Kineish, plaintiffs filed a claim of appeal with this Court. That claim was dismissed for lack of jurisdiction the reason being that the order was not a final order under MCR 7.202(6)(a)(i) "because it did not dispose of the claims against Progressive." *Hawamda v Keniesh*, unpublished order of the Court of Appeals, issued November 10, 2015 (Docket No. 329644).

could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428–29; 789 NW2d 211 (2010) (citations omitted)].

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999)].

## III. ANALYSIS

Pursuant to MCL 500.3135 of the No Fault Act, MCL 500.3101 *et seq.*, in order to establish tort liability for noneconomic loss resulting from a motor vehicle accident, an injured person must have "suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). In this case, plaintiff Hawamda claims to have suffered serious impairment of body function. "Serious impairment of body function" is defined to mean "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

In *McCormick v Carrier*, our Supreme Court interpreted MCL 500.3135 as providing the following test to determine serious body impairment:

To begin with, the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. MCL 500.3135(2)(a)(*i*) and (*ii*). If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court. *Id*.

If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed. The unambiguous language of MCL 500.3135(7) provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [487 Mich 180, 215; 795 NW2d 517 (2010)].

An " 'objectively manifested' impairment . . . is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. "[W]hen considering an 'impairment,' the focus is not on the injuries themselves, but how the injuries affected a

particular body function." *Id*. at 197 (citation and quotation marks omitted). "[T]he 'objectively manifested' requirement signifies that plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering and that showing an impairment generally requires medical testimony." *Id*. at 198 (citation and quotation marks omitted). Whether a body function is important will differ depending on the person. *Id*. at 199.

The trial court erred when it decided as a matter of law that no factual dispute existed as to the nature and the extent of Hawamda's injuries. The court correctly noted that to establish an objectively manifested impairment, "plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering." *Id*. at 198. The trial court was incorrect however, to hold that plaintiffs were not able to show the threshold injury required for a claim under MCL 500.3135. Plaintiffs offered documented manifestations of Hawamda's subjective symptoms through medical records that traced Hawamda's symptoms and treatment from the time of the accident in 2011, through 2014. Plaintiffs also offered objective manifestations of a serious impairment through MRIs of Hawamda's cervical and lumbar spine.

Hawamda's subjective complaints were consistently ones of back and neck pain. A William Beaumont Hospital medical record from May 9, 2011, the day of the accident, documented Hawamda's chief complaint as headache. August 2011 medical records from Troy Internal Medicine showed Hawamda was seen by Dr. Michael S. Lumberg for headaches that caused radiating pain into Hawamda's neck and left trapezius. These symptoms had continued and intensified when Hawamda began treatment with Dr. David Jankowski in 2012. Records from Summit Physicians Group show that Jankowski treated Hawamda from 2012 to 2014 for constant throbbing headaches, and neck and back pain. Dr. Jankowski ordered physical therapy, MRIs, pain management, and eventual steroid injections into Hawamda's spine.

As evidence that Hawamda's complaints of pain were without objective manifestation, defendants pointed to unremarkable MRIs of Hawamda's brain and neck taken on the same day as the car accident. In contrast, plaintiffs produced MRIs of Hawamda's lumbar and cervical spine taken in January 2013, and again in January 2014 upon order by Dr. Jankowski that showed disc bulges and herniations. In January 2013, radiologist Dr. Chintan Desai noted three impressions from the MRI of Hawamda's lumbar spine:

1. Disc bulges at $L_{3-4}$ and $L_{4-5}$ levels impinging upon the thecal sac and causing mild bilateral neuroforaminal narrowing.

2. Lumbar lordosia is straightened-possibly related to injury[.]

3. No spinal canal stenosis.

His impressions from the MRI of Hawamda's cervical spine were: "1. Disc bulges impinging upon thecal sac at $C_{4-5}$ and $C_{5-6}$ levels. 2. Cervical lordosis is straightened-possibly related to injury." Included in the doctor's findings was that the straightening of Hawamda's cervical and lumbar spine was possibly related to injury. One year later, in January 2014, Dr. Desai gave the following three impressions of Hawamda's cervical spine:

1. Cervical dextroscoliosis.

2.  Right paracentral protrusion type herniation with uncofacetal hypertrophy at C5-6 level causing mild-moderate right neuroforaminal narrowing.

3.  Disc bulges compressing the ventral thecal sac seen at C3-4 and C4-5 levels. [PL SD Resp, Exhibit B, p. 1; LCR].

And the following three impressions of Hawamda's lumbar spine:

1.  Musculoligamentous spasm / strain.

2.  L3-L4: Assymetric disc bulging causing mild left neuroforaminal narrowing.

3.  L4-L5: Disc bulge causing mild bilateral neuroforaminal narrowing.

These objective tests created a question of fact as to whether Hawamda suffered a serious impairment related to the accident.

Defendants refute the 2013 and 2014 MRIs because they were taken some two and three years after the accident. Defendants' basic argument is that because an injury did not immediately appear after the accident, there was no injury. Causation is generally an issue of fact to be decided by a trier of fact, *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002), and whether a condition temporally follows an event is not conclusive evidence of causation, *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). Additionally, the plain language of MCL 500.3135 does not include a temporal requirement. Together, the objective MRIs and medical records offered by plaintiffs relate the findings and subjective complaints to the accident.

Further, "we can conceive of no serious dispute that the spine is an extremely important part of every person's body." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011). "This Court has held that movement of one's back is an important body function." *Shaw v Martin*, 155 Mich App 89, 96; 399 NW2d 450 (1986) citing *Sherrell v Bugaski*, 140 Mich App 708, 711; 364 NW2d 684 (1984). Being able to use one's neck and back are important body functions. *Harris v Lemicex*, 152 Mich App 149, 153; 393 NW2d 559 (1986). Still, plaintiffs were required to show that the claimed impairments, if they were found to be caused by the accident, affected Hawamda's "general ability to lead his or her normal life." *Id*. at 195. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. at 202. MCL 500.3135 "merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed." *Id*. In addition, there is no temporal requirement as to how long a person's general ability must be affected. *Id*. at 203

By way of deposition testimony, plaintiffs presented evidence that Hawamda's general ability to lead his normal life was affected in such a way that his life is different since the accident. Hawamda testified that before the accident, he played basketball and soccer twice a week at neighboring parks with his family and friends. He bowled in the winter. After the accident, Hawamda has not played any sports and instead, he walks around the park. In psychologist Richard L. Weiss' Clinical Neuropsychological Examination of Hawamda on March 24, 2014, Hawamda indicated that his then current activities were "watching television,

listening to music, performing limited housework tasks, socializing with family and friends, attending physical therapy, and walking." Comparatively, Hawamda's activities are more sedentary since the accident. He reported that since the accident he tried to work part time but was not able to continue. He cannot lift heavy items anymore. He also reported that while he was independent with self-care, he sometimes needed help dressing. He was able to do some cooking, use the telephone, help his wife watch their children, and drive "when necessary (but not alone)." While this evidence is not overwhelming, it does support that Hawamda's claimed manifested impairments affected his "general ability to lead his or her normal life."

Because plaintiffs presented questions of fact concerning whether Hawamda's current injury met the statutory threshold for a serious impairment of a bodily function under MCL 500.3135, whether any such serious impairment was caused by the accident, and whether his general ability to lead a normal life was affected by the accident, summary disposition in favor of defendants was error.

Plaintiffs do not mention or brief any argument related to the underinsured motorist claim they pled against defendant Progressive in the trial court on appeal.[2] While "any issue not briefed and supported on appeal is considered abandoned," *Royal Indem Co v H S Watson Co*, 93 Mich App 491, 494; 287 NW2d 278 (1979), we also consider this issue not preserved for review. Because the trial court's disposition of plaintiffs' claims against Progressive was derived from its disposition of plaintiffs' claims against Kineish, and we reverse the trial court's grant of summary disposition to Kineish, plaintiffs' claims against Progressive will have to be reconsidered.

Reversed and remanded. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[2] Plaintiffs' Statement of Question Presented states that the trial court erroneously dismissed their action based on a discovery oversight. Plaintiffs did not brief this issue on appeal. We therefore do not address it. *Dolby v Dillman*, 283 Mich 609, 613; 278 NW 694 (1938) ("A mere statement of a position without argument and citation of authority in support thereof is insufficient to present the matter for the consideration of an appellate court.").