# STATE OF MICHIGAN

# COURT OF APPEALS

MARVIN ASKER,

       Plaintiff-Appellant,

v

ISHMAEL SANDERS and COMCAST OF
COLORADO/FLORIDA/MICHIGAN/NEW
MEXICO/PENNSYLVANIA/WASHINGTON,
LLC,

       Defendant-Appellee.

UNPUBLISHED
June 13, 2017

No. 331452
Oakland Circuit Court
LC No. 2015-147818-NI

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

In this action for noneconomic tort damages under the no-fault act, MCL 500.3101 *et seq.*, the trial court granted summary disposition pursuant to MCR 2.116(C)(10) in favor of defendants, Ishmael Sanders and Comcast, Sanders' employer. Because we find that plaintiff presented sufficient evidence of a threshold injury under MCL 500.3135 to survive summary disposition, we reverse and remand for further proceedings.

This case arises from an August 22, 2012 motor vehicle accident involving plaintiff, whose vehicle was stopped at a red light, and defendant Sanders, who rear-ended plaintiff's vehicle at about 10 to 15 miles per hour while driving a work van for Comcast. On impact, plaintiff felt his back crack and experienced a slight pain in his neck. Plaintiff returned to work immediately after the accident, but increased pain and swelling drove plaintiff to check himself in to an emergency room six hours later. X-rays revealed no appreciable skeletal injuries. No MRI[1] was conducted. Plaintiff was released with a prescription for pain medication and directed

---

[1] As we explained in *Chouman v Home Owners Ins Co,* 293 Mich App 434, 442 n 4; 810 NW2d 88 (2011), that an "MRI," or "magnetic resonance imaging" procedure, "permits detailed, potentially three-dimensional viewing of soft tissue structures within the body-such as muscles, nerves, and connective tissue-without using ionizing radiation; as distinct from x-rays or CT scans, which do subject the body to ionizing radiation and are much less useful for visualizing soft tissue."

to follow-up. Plaintiff started seeing a chiropractor but discontinued his visits as his pain worsened.

In March, 2013, plaintiff was evaluated by Dr. Stefan Glowacki at Metro Physical Therapy, after complaining of worsening back, neck, and leg pain. Plaintiff indicated that he was having problems engaging in manual labor and was unable to have sex due to back pain. Plaintiff also stated that sitting for too long aggravated his pain. Glowacki assessed plaintiff as experiencing "[i]mpaired joint mobility, motor function, [and] muscular performance." On physical examination, Glowacki observed a "restricted range of motion," specifically noting plaintiff's inability to touch his toes or look straight up or down. Glowacki also observed diminished sensation in plaintiff's ulnar nerve distributions, "spine stiffness with paraspinal muscle spasm" and "diminished sensation in the L4-L5 nerve root distribution on [the] left side," and atrophy of muscles in plaintiff's left leg. Glowacki diagnosed plaintiff with herniated discs in the cervical and lumbar spine, and contusions of the neck, back, right shoulder, and left knee. Glowacki found plaintiff "totally incapacitated" and ordered domestic help and attendant care eight hours a day, seven days a week until April 10, 2013. Glowacki recommended physical therapy and ordered an MRI. Plaintiff attended physical therapy every two to three days for the following month and a half, discontinuing treatment after finding it unsuccessful.

An April 13, 2013 MRI performed by Dr. Douglas Eiland at Oak Park Imaging revealed "[r]ight posterolateral disc herniation with accompanying osteophyte protrusion" of plaintiff's C3-C4 spinal disc, and "broad-based posterior herniation" of plaintiff's C6-C7 spinal disc with "loss of height." Thereafter, Glowacki extended plaintiff's restrictions and continued the order for domestic help and attendant care through May 31, 2013.

In July, 2014, plaintiff saw Dr. Martin Kornblum about ongoing neck and lower back pain. Kornblum noted the presence of herniated discs and referred plaintiff to pain management. Kornblum also ordered another MRI. On referral, Dr. Michael Paley at Silverpine Imaging performed an MRI of plaintiff's lumbar spine, reporting herniation of the T11-T12 discs and a slight bulging of the L3-L4 and L4-L5 discs. Plaintiff returned to see Kornblum in September, 2014, and saw pain management specialist Dr. Anthony Oddo in October, 2014. Kornblum suspected that plaintiff's pain was due to the newly discovered herniation of plaintiff's T11-T12 disc, but noted that the disc changes were small. Both Kornblum and Oddo discussed surgical options with plaintiff but recommended that plaintiff pursue "more conservative" treatments, such as physical therapy and medication, in the alternative.

On November 18, 2014, plaintiff returned to see Kornblum, who noted that plaintiff was "still having tenderness throughout his cervical and mostly his lumbar paraspinal musculature," and experiencing "pain down his left lower extremity including numbness and tingling in his great toe." Kornblum referred plaintiff for a CT scan and a discogram "for further evaluation and surgical consideration." Plaintiff saw his primary care physician twice after the November, 2014 visit with Kornblum, but there is no indication in the record that plaintiff followed up with Kornblum, or that surgery was ever scheduled.

On June 30, 2015, plaintiff brought a complaint against Sanders and Comcast, jointly and severally, alleging negligence and seeking noneconomic damages under MCL 500.3135, for injuries resulting from the August 22, 2012 motor vehicle accident. According to plaintiff,

continuing pain following the accident left him disabled and made it difficult for him to engage in basic activities he enjoyed before the accident, such as going to the gym, playing sports, maintaining sexual intimacy with his wife, and lifting his infant son. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to establish that he suffered a serious impairment of body function. In response, plaintiff argued that his deposition testimony and medical history established factual disputes over the nature and extent of plaintiff's injuries which precluded summary disposition as a matter of law.

The trial court held a hearing on defendant's motion, but did not allow presentation of arguments. Instead, the trial court questioned plaintiff's counsel regarding plaintiff's alleged failure to pursue ongoing treatment and a late-filed supplemental affidavit of Kornblum, who would testify to the elements of serious impairment of body function and proximate cause. The trial court declined to consider the affidavit, and expressed some skepticism regarding plaintiff's claimed inability to lead a normal life. The trial court focused extensively on plaintiff's admission in deposition that he traveled for vacation at least four times after the motor vehicle accident. Ultimately, the trial court granted defendant's motion. First, although the issue was not raised in defendant's motion, the trial court found that plaintiff failed to establish that his alleged injuries were caused by the motor vehicle accident. Second, the trial court found that plaintiff failed to establish that his injuries affected his general ability to lead a normal life. Specifically, the trial court found no indication in the record that a physician told plaintiff to avoid any of the activities plaintiff claimed to be unable to participate in, and no indication that plaintiff ever tried to engage in these activities and was unable to do so. Focusing on plaintiff's ability to travel long distances on vacation, the trial court opined that "plaintiff's activities in the years following the motor vehicle accident do not support his assertions that he was unable to engage in activities without experiencing pain."

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10) because genuine issues of material fact exist regarding the nature and extent of plaintiff's injuries, whether plaintiff's injuries were caused by the motor vehicle accident, and whether, as a result of the injuries, plaintiff suffered a serious impairment of a body function affecting his ability to lead a normal life. We agree.

We review a trial court's decision on a motion for summary disposition de novo. *Shinn v Michigan Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016). When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Under MCR 2.116(C)(10), summary disposition is proper if "there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 441; 814 NW2d 670 (2012). The party opposing the motion may not rely on mere allegations, and has the burden to set forth specific facts to prove a genuine issue of material fact exists to preclude summary disposition. *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006).

Under Michigan no-fault law, tort liability for noneconomic loss resulting from a motor vehicle accident is limited. *Diallo v LaRochelle*, 310 Mich App 411, 415; 871 NW2d 724 (2015) (citation omitted). Under MCL 500.3135(1), a motor vehicle operator is subject to tort liability for noneconomic loss when "the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement." A serious impairment of body function is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010), our Supreme Court articulated the following guidelines for consideration of whether a plaintiff has made a sufficient showing of a threshold injury to survive summary disposition:

> To begin with, the court should determine whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court.
>
> If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed. The unambiguous language of MCL 500.3135(7) provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [Citations omitted.]

The trial court did not adhere to these guidelines when it decided defendant's motion for summary disposition. However, it is clear that the trial court concluded that it could decide the threshold issue as a matter of law, dispensing with any examination of the facts and instead granting defendants' motion on the legal issues of causation and failure to satisfy prong three of the threshold injury test. Given the trial court's lack of analysis, we are unable to determine whether, pursuant to the requirements of MCL 500.3135 and *McCormick*, the trial court found that there was no factual dispute concerning the nature and extent of plaintiff's injuries, or determined that a factual dispute existed but was immaterial. However, we are able to resolve the matter on the facts presented. It is undisputed that plaintiff suffered from herniated discs and spinal protrusions. In fact, defendants attached plaintiff's medical records and MRI results supporting plaintiff's claims of injury to their motion for summary disposition. In the lower court, defendants argued only that plaintiff's injuries could not be considered so severe as to have caused a substantial change in plaintiff's life. In essence, defendants challenge the "nature and extent of plaintiff's injuries." However, the comparative severity of plaintiff's impairment, while relevant, is not "significant" or "essential" to the determination of whether plaintiff's impairment "affects his general ability to lead his normal life." MCL 500.3135(5); See *McCormick*, 487 Mich at 194, 216-217. Therefore, the question of whether plaintiff met the serious impairment threshold is properly addressed as a matter of law.

Under the first *McCormick* prong, a plaintiff must establish "an objectively manifested impairment." *Id.* at 215. In other words, a plaintiff must show that his injuries are "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196. "[T]he 'objectively manifested' requirement signifies that plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering." *Id.* at 198 (quotation marks and citation omitted).

Here, defendants argue that plaintiff failed to establish an objectively manifested impairment because there was no sworn medical testimony properly before the court at the time of defendants' motion for summary disposition. We disagree. The fact that there was no sworn medical testimony on the record before the motion for summary disposition is not dispositive. Defendant confuses the burden of proof necessary to survive summary disposition with the burden of proof necessary to prevail on the merits. And while proving impairment "generally" requires medical testimony, our Supreme Court made clear that medical testimony is not *always* required. *Id.* Here, the record is replete with documented physical manifestations of plaintiff's impairment in the form of medical records describing symptoms and treatment dating back to the date of the motor vehicle accident. These records included MRI reports confirming the presence of herniated discs and protrusions of the lumbar spine. Defendants do not dispute the accuracy of these records. Plaintiff's subjective complaints were consistently of back, neck and leg pain. The objective tests corroborated plaintiff's subjective complaints and created a question of fact as to whether plaintiff suffered an objectively manifested impairment.

Defendants also argue that plaintiff cannot prove an objective manifestation of his alleged injuries because individuals who sustained similar or more serious injuries have been found by this Court to not have sustained an objectively manifested impairment. Defendants cite to a number of this Court's unpublished decisions upholding summary disposition on grounds of failure to establish "serious impairment of body function," insisting that the plaintiffs in each case suffered "more serious" injuries than those suffered by plaintiff, and plaintiff must therefore be prohibited from claiming that he sustained an "objectively manifested impairment." Even if we shared defendants' subjective belief that the plaintiffs in the cited cases "sustained more serious and more painful injuries" than the injuries suffered by plaintiff, we are not persuaded that the comparison supports summary dismissal of plaintiff's claims. Not only are all of defendants' cited unpublished opinions nonbinding, MCR 7.215(C)(1), they lack persuasive power because "[t]he serious impairment analysis is inherently fact- and circumstance-specific and must be conducted on a case-by-case basis," *McCormick*, 487 Mich at 215. It therefore "does not lend itself to any bright-line rule." *Id.* at 216. "[B]ecause the Legislature avoided drawing lines in the sand . . . so must we." *Id.*

Defendants do not specifically dispute plaintiff's ability to satisfy the second *McCormick* prong, and "we can conceive of no serious dispute that the spine is an extremely important part of every person's body." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 444; 810 NW2d 88 (2011). This Court has specifically held that "movement of one's back is an important body function." *Shaw v Martin*, 155 Mich App 89, 96; 399 NW2d 450 (1986). We therefore proceed to consider whether plaintiff presented sufficient evidence under *McCormick*'s third prong, which requires a showing that plaintiff's impairment affected his general ability to lead his normal life. *McCormick*, 487 Mich at 200.

A serious impairment "affect[s] the person's ability to lead his or her normal life" when it has "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. Importantly, MCL 500.3135(5) "merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed." *Id*. "Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*.

Disputing plaintiff's ability to satisfy prong three, defendants again cite to a number of this Court's unpublished decisions, asking us to find that because "other plaintiffs whose lives were much more affected by injuries . . . have been found not to have sustained a threshold injury," plaintiff cannot prove that his life has been sufficiently affected. For reasons we explained in our discussion of *McCormick*'s first prong, we find summary dismissal of plaintiff's claims on such a comparison inappropriate.

Defendants also suggest that plaintiff's impairment could not have affected plaintiff's life because plaintiff's x-rays revealed no fractures and plaintiff was never hospitalized or subjected to invasive procedures. This is a specious argument, considering defendants' inclusion of plaintiff's medical records to support their motion for summary disposition. Regardless, it is clear that "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. There is no requirement that a plaintiff's injuries be of a certain nature, or that treatment of a plaintiff's injuries involves invasive procedures.

Plaintiff has shown that his impairment affected his general ability to lead his normal life because it has, at least, influenced some of his capacity to live in his normal, pre-injury manner of living. Plaintiff's lifestyle is more sedentary than it was before the accident. In his deposition, plaintiff testified that before the accident he was very athletic and loved working out. Since the accident, however, his injuries have made it impossible for him to engage in athletic activities without experiencing back swelling and "excruciating pain." Additionally, plaintiff testified that he is no longer able to ride bicycles with his children, engage in certain sexual activities with his wife, or carry his infant son. Plaintiff's capacity to work and care for his three children has also been affected. After the accident, multiple physicians observed decreased mobility and range of motion. Six months after the accident, Glowacki deemed plaintiff "totally incapacitated" and ordered daily domestic help and attendant care. While plaintiff's incapacitation was not confirmed or extended by any physicians beyond May, 2013, MCL 500.3135(5) contains no "temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*. at 203 (quotation marks omitted).

The trial court improperly considered the fact that plaintiff had managed to travel for vacations conclusive proof that plaintiff's ability to live his normal life had not been affected by his impairment. Plaintiff did testify at his deposition that he traveled to Las Vegas four times in 2013 and 2014, to gamble and sit by the pool with his wife and children. He also traveled to Cancun, Mexico for two weeks with his wife, and took his children to an Ohio waterpark for two days in 2013. However, there is no evidence on the record of what activities plaintiff engaged in

while on vacation, or whether they are the same types of activities he would have engaged in prior to the accident. The trial court failed to comparatively analyze plaintiff's life before the motor vehicle accident and his life after the motor vehicle accident, and instead relied on its own "experience" with back pain to infer that a serious back injury would prevent plaintiff from sitting on an airplane for long periods of time. Summary disposition must be based on the facts presented, and the trial court's injection of personal experience, especially on an issue requiring medical expertise, was inappropriate. The fact that plaintiff was able to travel for vacation, alone, does not prove that his ability to engage in other activities was unaffected. For a serious impairment to affect a person's manner of living, it does not need to destroy the person's life or render all activity impossible. The fact that some aspects of plaintiff's life were affected by his impairment was sufficient to satisfy *McCormick*'s third prong.

Because plaintiff has presented questions of fact concerning whether plaintiff's injury met the statutory threshold for serious impairment of a body function under MCL 500.3135, summary disposition under MCR 2.116(C)(10) was premature.

The trial court further erred in its determination that summary disposition was appropriate based on plaintiff's failure to prove that plaintiff's alleged injuries were caused or aggravated by the motor vehicle accident. Although at the hearing on defendants' motion for summary disposition the trial court suggested that it "agreed with defendant" that plaintiff failed to prove causation, it is clear that the trial court considered the issue of causation sua sponte. Defendants did not raise the issue in their motion for summary disposition. In fact, defendants conceded that plaintiff's injuries arose from the motor vehicle accident in their accompanying brief, stating that "[plaintiff] has failed to establish that injuries from his accident, which involved a bump to the back of his full-sized van at 10 to 12 miles per hour, affected his ability to live in his normal manner of living." Plaintiff had no notice that the causation issue would be raised at the summary disposition hearing and, indeed, it was not raised by the trial court or either party until the trial court rendered its oral opinion and granted defendants' motion. A trial court has the authority to grant summary disposition sua sponte under certain circumstances. MCR 2.116(I). However, under the circumstances presented here, the basic requirements of notice and a meaningful opportunity to be heard were not satisfied, and summary disposition was therefore inappropriate. *Al-Maliki v LaGrant*, 286 Mich App 483, 486-489; 781 NW2d 853 (2009). We could reverse the trial court's decision on the causation issue for procedural error alone. See *id*. at 488-489 (reversing a trial court's order granting summary disposition after raising sua sponte the issue of causation and depriving the plaintiff of an opportunity to respond).

However, we also find reversal appropriate because the requirements for summary disposition pursuant to MCR 2.116(C)(10) have not been met with regard to the issue of causation. Typically, causation is a question of fact for a jury. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). The record here contains evidence creating a dispute of fact and precluding summary disposition as a matter of law. We again note that defendants conceded that plaintiff's alleged injuries arose from the motor vehicle accident involving a van belonging to Comcast and driven by Sanders. Medical records attached to *defendants'* motion for summary disposition showed that plaintiff reported to the hospital mere hours after the motor vehicle accident, complaining of back and neck pain. Subsequent MRI reports indicate that plaintiff suffered from at least two herniated discs. Defendants have presented no evidence to support an alternate cause for plaintiff's injuries. At a minimum, questions of fact remained. To support

the element of causation, a plaintiff need only set forth specific facts to "support a reasonable inference of a logical sequence of cause and effect." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004) (quotation marks and citation omitted). In his deposition, plaintiff testified that he was rear-ended, he experienced pain and sought medical attention, he was diagnosed with injuries, and subsequent pain and discomfort restricted his ability to participate in activities he had been able to participate in before the accident. This is sufficient evidence of causation to survive summary disposition.

Reversed and remanded. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello