# STATE OF MICHIGAN

# COURT OF APPEALS

GARY HENRY and KATHY HENRY,

      Plaintiffs-Appellees,

v

DOW CHEMICAL COMPANY,

      Defendant-Appellant.

FOR PUBLICATION
June 1, 2017

No. 328716
Saginaw Circuit Court
LC No. 03-047775-NZ

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

GADOLA, J. (*dissenting*).

Defendant appeals as on leave granted the July 17, 2015 order of the trial court denying its motion for summary disposition pursuant to MCR 2.116(C)(7)[1] and (C)(8). The majority opinion concludes, in part, that the trial court properly denied summary disposition pursuant to MCR 2.116(C)(7) upon finding that plaintiffs' claims were not barred by the statute of limitations. Because I disagree with this conclusion, I respectfully dissent.

This case involves plaintiffs' contention that defendant is responsible for the presence of dioxin on their real property located in the Tittabawassee River flood plain, downstream from defendant's plant. As described by the majority opinion, this lawsuit has a lengthy history. Plaintiffs acknowledge in their amended complaint that dioxin was present in the Tittabawassee River by the 1980s. In fact, according to a 2004 letter from the United States Environmental Protection Agency (EPA), as early as the 1970s dioxin emissions from defendant's Midland plant had been identified as the primary source of dioxin contamination in that area and further had been identified as a high risk to human health and the environment. Defendant avers that throughout the 1970s and 1980s, the dioxin contamination of the river and the flood plain featured prominently in the local and national media, including state and federal regulatory notices, Congressional hearings, a Michigan Attorney General Special Task Force, an EPA study

---

[1] The trial court's order does not specify that summary disposition was denied pursuant to MCR 2.116(C)(7). Defendant, however, moved for summary disposition pursuant to that subsection on the ground that plaintiffs' claims were barred by the statute of limitations and the trial court specifically ruled against defendant on that ground.

released in 1985 confirming that defendant's wastewater was the source of the dioxin in the river, and a 1986 publication of the DNR warning residents to avoid contact with floodwater downstream from defendant's Midland plant.

In any event, the parties do not dispute that in 2001 the Michigan Department of Environmental Quality (MDEQ) again confirmed the presence of dioxin in the soil of the river's flood plain and later indicated that defendant's Midland, Michigan plant was a likely source of the contamination. In February, 2002, the MDEQ issued an information bulletin regarding its Environmental Assessment Initiative of the river's flood plain. In 2003, plaintiffs filed this action alleging, in part, that their real property had declined in value as a result of the dioxin contamination emanating from defendant's actions, and alleging theories of negligence and nuisance.

After much litigation and appellate review, as described in the majority opinion, defendant moved before the trial court for summary disposition, in part pursuant to MCR 2.116(C)(7), arguing that plaintiffs' claims were barred by the applicable statute of limitations. The trial court rejected this argument, concluding that

> [t]he types of injuries Plaintiffs allege began, at the earliest, in February of 2002, and Plaintiffs' initial action here was filed well within the three years allowed by MCL 600.5805. Plaintiffs' causes of action accrued in February of 2002 when the MDEQ's phase I sampling results were released to the public and concluded that elevated dioxin concentrations were pervasive in the Tittabawassee river floodplain. Prior to this time, Plaintiffs were free to use and enjoy their property without worry or restriction, and to sell their property without loss of value. After this time, MDEQ's dioxin-based restrictions unreasonably and significantly interfered with Plaintiffs' use and enjoyment of their property, prevented Plaintiffs from freely using their property, and devalued Plaintiffs' property.

The trial court consequently denied defendant's motion for summary disposition pursuant to MCR 2.116(C)(7). Defendant now appeals to this Court from that decision of the trial court.

This Court reviews de novo the grant or denial of summary disposition. *Graham v Foster*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 152058); slip op at 4. When reviewing a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7), this Court will consider all documentary evidence and accept the complaint as factually accurate unless it is specifically contradicted by affidavits or other appropriate documents. *Frank v Linkner*, ___ Mich ___, ___; ___ NW2d___ (2017) (Docket No. 151888); slip op. at 5. Further, we consider all documentary evidence in the light most favorable to the non-moving party. *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). If there is no factual dispute, whether the claim is barred by the statute of limitations is a question of law for the court. *Id*.

Defendant in this case argues that the trial court erred in denying its motion for summary disposition because plaintiffs' claims are barred by the statute of limitations. A statute of limitations is a "law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim *accrued*." (alteration and

-2-

emphasis in *Frank*) *Frank*, ___ Mich at ___; slip op. 6, citing *Black's Law Dictionary* (10th ed). In this case, the parties agree that the applicable statute of limitations is MCL 600.5805(10), which states that "the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."

The parties dispute, however, whether plaintiffs timely filed their claim within that three-year period of limitations. To answer that question, it is necessary to determine when plaintiffs' claims accrued for purposes of calculating the starting point of the three-year limitations period. The time of accrual for claims subject to the limitations period of MCL 600.5805(10) is defined by MCL 600.5827, which provides that the limitations period begins to run from "the time the claim accrues," and "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 387; 738 NW2d 664 (2007).

Our Supreme Court in *Trentadue*, interpreting this language, explained that "the wrong is done when the plaintiff is harmed rather than when the defendant acted." *Id*. at 388. This language stems from our Supreme Court's decision in *Stephens v Dixon*, 449 Mich 531, 534-535; 536 NW2d 755 (1995), which in turn referred to the Court's decision in *Connelly v Paul Ruddy's Equip Repair & Service Co*, 388 Mich 146, 151; 200 NW2d 70 (1972), where our Supreme Court stated "[o]nce all of the elements of an action for . . . injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred." *Id*.; see *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 290; 769 NW2d 234 (2009).

The Court in *Trentadue* also expressly rejected the common law discovery rule, stating that the "statutory scheme is exclusive and thus precludes this common-law practice of tolling accrual based on discovery in cases where none of the statutory tolling provisions apply." *Id*. at 389. Similarly, in *Garg v Macomb Co Community Mental Health Servs,* 472 Mich 263, 282; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005), our Supreme Court held that Michigan does not recognize the "continuing violations" doctrine, explaining that nothing in the statute of limitations "permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as 'continuing violations.' To allow recovery for such claims is simply to extend the limitations period beyond that which was expressly established by the Legislature." Thus, in determining when plaintiffs' claims accrued under MCL 600.5827, and mindful of *Trentadue* and *Garg*, we must ascertain when plaintiffs were harmed, not when plaintiffs learned they had been harmed nor when they learned the extent of the harm. We further undertake this analysis mindful of the precept that the claim accrues and the period of limitations begins to run once all elements of the action, including damages, are present.

The majority opinion in this case states that "[r]egardless of when plaintiffs were presented with adequate information to support their claims, their claims accrued and the statute of limitations began to run when plaintiffs first suffered the harm of toxic levels of dioxin present in their soil." I agree. The majority, however, then concludes that "[t]he 2002 MDEQ notice did not simply inform plaintiffs of the harm caused by defendant's activities. It marked the creation of the damages element necessary for plaintiffs' nuisance and negligence claims. Plaintiffs'

damages, including the loss of the use and enjoyment of their property and depreciation of their property values, arose from the harm of dioxins in their soil reaching potentially toxic levels but did not exist in any tangible form until the MDEQ published its 2002 notice." On this point, I must disagree. It may be true that the value of plaintiffs' property changed when the MDEQ published its 2002 bulletin, but plaintiffs' discovery in 2002 that their damages were greater than originally supposed when the dioxin was deposited on their properties, possibly as early as the 1970s, did not create a new accrual date for plaintiffs' claims. Such reasoning overlooks the clear directive of MCL 600.5827 that "the claim accrues at the time the wrong upon which the claim is based was done *regardless of the time when damage results*" (emphasis added).

The harm to plaintiffs is the presence of dioxin in the soil of their properties. The publication of the MDEQ bulletin did not place the dioxins in plaintiffs' soil. Presumably, defendant's actions did that. The MDEQ bulletin was, at most, new information to plaintiffs and others that dioxin was present in the soil of the river's flood plain in a potentially harmful level; in other words, the bulletin facilitated the "discovery" of the level of damages. Thus, the publication of the MDEQ bulletin is not the "wrong" upon which the claim is based as envisioned by MCL 600.5827, nor is it the "harm" described by *Trentadue*. The MDEQ bulletin, at most, marks the *discovery* by plaintiffs of the extent of the harm and the level of damages. Because Michigan has rejected the discovery rule as a mechanism to toll the running of the period of limitations, and because MCL 600.5827 is explicit that the time when damage results is not the operative factor for accrual, the 2002 issuance of the MDEQ bulletin does not alter in any way the date on which the harm occurred. Instead, the period of limitations began to run from the date that plaintiffs were harmed, which occurred (if at all) when the dioxin dumped into the river by defendant reached plaintiffs' properties or otherwise reached a particular plaintiff. The claim then accrued, regardless of whether it was possible at that time to calculate the level of monetary damage. The circuit court therefore erred in calculating the running of the period of limitations from the date of the 2002 MDEQ bulletin. I would therefore remand to the circuit court for redetermination of the accrual date of plaintiffs' claims. On remand, for defendant to prevail on its motion for summary disposition pursuant to MCR 2.116(C)(7) on the theory that plaintiffs' claims were barred by the statute of limitations, defendant would be required to establish that plaintiffs were harmed, if at all, more than three years before plaintiffs filed their complaint.

/s/ Michael F. Gadola