*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DESMOND WASHINGTON,

        Plaintiff-Appellant,

and

GLOBAL MEDICAL TRANSPORTATION, LLC, R&S REHAB, LLC, and MICHIGAN CRNAs STAFFING

        Intervening Plaintiffs,

v

TEREASA BROTHERN and CITY OF DETROIT,

        Defendants-Appellees,

and

JOHN DOE, an individual whose identity is currently unknown,

        Defendant.

UNPUBLISHED
March 7, 2019

No.  340717
Wayne Circuit Court
LC No.  16-007822-NI

Before:  TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

-1-

In this automobile negligence action, plaintiff Desmond Washington appeals the trial court's order granting defendants' summary disposition under MCR 2.116(C)(10).[1] The trial court found, as a matter of law, that plaintiff did not sustain a serious impairment of an important body function as a result of a motor-vehicle accident. Because there are material questions of fact concerning plaintiff's alleged injuries, we reverse the grant of summary disposition to defendant City of Detroit. We also reverse the grant of summary disposition to defendant John Doe given that there is a question of fact as to whether the unidentified bus driver in this case was grossly negligent. However, we affirm the trial court's grant of summary disposition to defendant Tereasa Brothern on governmental immunity grounds because plaintiff has failed to offer evidence showing negligence.

## I. BACKGROUND

This case arises out of an accident at a City bus "hub" in August 2015. Plaintiff was riding on a bus driven by Brothern. Brothern testified at deposition that when she pulled into the hub to drop off passengers, another City bus pulled in front of her. Brothern testified that the driver, the unidentified defendant John Doe, entered the flow of traffic from a "rest area" without activating his turn signal and that "the coach was right in my face suddenly." She testified that she had to apply the brakes "more aggressively" and "faster than [she] normally would." She was shown a copy of the statement she wrote on the day of the incident in which she stated that she "mashed" the brakes in order to avoid a crash and she agreed that her statement in the report would be more accurate than her present recollection. She agreed that her passengers were "jolted forward" as a result.

Plaintiff testified at deposition that the other bus "shot out of the parked position and the bus I was on had to slam on the brakes to keep from going through the bus." Plaintiff explained that when the bus stopped, "I slammed forward to the back of the seat and I thrusted back." Plaintiff felt pain and complained of injuries to his lower back and knees; another passenger also claimed injury. Plaintiff was transported to the emergency room where he was diagnosed with a knee contusion and lower back discomfort.

An x-ray taken of plaintiff's lumbar spine at the hospital showed "mild stable retrolisthesis of L5 on S1." Retrolisthesis is defined as "the backwards slippage of one vertebral

---

[1] The trial court did not specify under which subrule it granted summary disposition. Because the court considered materials outside the pleadings, we will analyze the court's ruling under MCR 2.116(C)(10). A trial court's decision whether to grant summary disposition is reviewed de novo. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

body on another . . . ."[2]  An MRI of plaintiff's lumbar spine taken approximately one month after the accident showed an "extruded herniated disc" at L4-5, with "probable right L4 nerve root impingement," and a "right paracentral herniation" at L5-S1, with impingement of the "right S1 nerve root."

Plaintiff's medical records show that he had chronic low back pain before this incident and that he had been involved in several other accidents. However, those records also show that x-rays and MRIs taken of plaintiff's lower back before the August 2015 accident did not show retrolisthesis or disc herniation.

Plaintiff testified that his back pain increased significantly following the August 2015 accident. He testified that he was previously able to work a labor-intensive job. He did not return to work after the accident, believing that he could longer perform the tasks required by his employment given the pain he was experiencing. His treating physicians issued disability certificates following the accident and thereafter. Plaintiff was prescribed physical therapy, chiropractic treatment, and medication after the accident. He also underwent two series of three epidural steroid injections. Dr. Martin Kornblum oversaw plaintiff's first series of epidural injections, and given that plaintiff did not benefit from the treatment, Dr. Kornblum opined that plaintiff should consider lumbar fusion surgery.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in June 2016. He pleaded in avoidance of governmental immunity, alleging gross negligence against the bus drivers. Plaintiff also alleged that the City was liable under the motor-vehicle exception to governmental immunity. In addition, he asserted a first-party claim for no-fault benefits against the City.

In July 2017, defendants moved for summary disposition under MCR 2.116(C)(7) (governmental immunity), (C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). Defendants argued that the evidence contradicted plaintiff's claim that he suffered a serious impairment of body function. Defendants relied on surveillance footage of plaintiff[3] and a report from Dr. Patrick Stephens, who was retained by defendants to examine plaintiff for purposes of this litigation. Dr. Stephens saw plaintiff in February 2017 and he opined in his report that plaintiff's current complaints were not caused by the August 2015 bus accident but from his history of chronic low back pain and prior traumatic events. Dr. Stephens stated that plaintiff may have sustained "a lumbosacral strain and thoracic strain" in the accident but that plaintiff's current state was not attributable to that type of injury. Defendants also argued that

---

[2] Kang et al, *Retrolisthesis and lumbar disc herniation: a postoperative assessment of patient function*, 13 The Spine Journal 4 (2013), available at <https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3733236/> (accessed March 1, 2019).

[3] The video shows plaintiff standing outside and talking with friends for about a half an hour while children play. At one point, plaintiff kicked a ball that had landed near him. He also caught and threw a football several times.

they were entitled to governmental immunity because plaintiff had not shown that Brothern acted negligently.

In response, plaintiff provided an affidavit from Dr. Kornblum, who opined that plaintiff "sustained severe and ongoing injuries to his lumbar spine" as a result of the August 2015 accident. With respect to governmental immunity, plaintiff contended that Brothern's testimony at least established a question of fact regarding the unidentified driver's negligence.

At oral argument, defendants confirmed that they were "asserting that plaintiff's injuries are not due to the bus accident, but some other cause." In granting defendants summary disposition, the court stated:

> Anyway, with regard to the threshold issue. The defendant is arguing that the IME doctors found that plaintiff suffered no objective traumatic injury. However, [defendants' counsel] is also citing medical records on [plaintiff's] admittance to the emergency room.
>
> Whether plaintiff has sustained a serious impairment of an important body function is question of law for the court. And if the court finds that there is no factual dispute concerning the nature and extent of the injuries it's not material to the determination. Plaintiff attaches the affidavit of his treating doctor Martin Kornblum, who finds a serious impairment. Based, however, on the medical records on his initial hospital visit, and based on his prior accidents, the court finds the plaintiff does not meet the threshold, and therefore, I'm granting the defense's motion for summary disposition.

The court entered an order dismissing plaintiff's complaint in its entirety.

## III. ANALYSIS

### A. SERIOUS IMPAIRMENT

The no-fault act, MCL 500.3101 *et seq.*, "establishes an injury threshold for tort liability caused by the ownership, maintenance, or use of a motor vehicle." *Stephens v Dixon*, 449 Mich 531, 539; 536 NW2d 755 (1995). Specifically, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Thus, in order for plaintiff's tort action to proceed, the bus accident must have been a cause of the alleged serious impairment of body function. When there is no material factual dispute concerning the nature and extent of a plaintiff's injury, the court determines, as a matter of law, whether the serious impairment of body function threshold is met as a question of law. However where there are questions of fact regarding the nature and extent of those injuries, the issue is one for the trier of fact. MCL 500.3135(2)(a)(*i*)-(*ii*).

In this case, there are plainly questions of fact as to the nature and extent of plaintiff's injuries caused by the August 2015 accident, and the trial court usurped the role of the trier of fact in ruling otherwise. First, the trial court simply discarded the statements and opinions contained in the affidavit of plaintiff's treating doctor, Dr. Kornblum. That affidavit recounted

-4-

the doctor's findings upon examination, positive orthopedic tests, and the results of imaging studies. It also noted the treatment provided to plaintiff, including epidural injections and a recommendation of spinal surgery. In conclusion, the doctor opined:

> Based upon my experience, my training, physical examination, my review of the diagnostic testing and medical records, as well as the patient's history, it is my opinion, within a reasonable degree of medical certainty, that Mr. Washington sustained severe and ongoing injuries to his lumbar spine, that required medical treatment; and ultimately may require a lumbar fusion surgery as a result of the August 27, 2015 motor vehicle collision.

Instead of accepting Dr. Kornblum's opinion for purposes of summary disposition, the trial judge stated that the plaintiff's prior medical records and emergency room visit convinced her that all of plaintiff's injuries predated the collision. In reaching this conclusion, the trial court not only failed to consider the treating physician's opinion, it also failed to consider extensive post-injury records that at a minimum created a question of fact. Moreover, the court ignored the fact that even where there is a pre-existing condition, "the aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). Thus, the question is whether plaintiff suffered a serious impairment as a result of the accident, not whether plaintiff had any prior impairment.

Viewing the evidence in a light most favorable to plaintiff, as the law requires, there is a question of fact about the cause of plaintiff's injuries and resulting limitations. Medical imaging of plaintiff's lower back before the accident was negative for significant pathology, but an x-ray taken after the accident showed retrolisthesis on L5-S1, i.e., the slippage of one vertebrae over another. Moreover, a post-accident MRI showed herniated discs at L4-L5 and L5-S1, neither of which appeared in pre-accident imaging studies. Defendants' retained physician opined that the films showed show only degenerative pathology, but as noted, plaintiff's treating physician reached the opposite conclusion. Apparently the trial court believed Dr. Stephens and not Dr. Kornblum. However, it is axiomatic that "[a] trial court may not weigh evidence when ruling on a summary disposition motion or make credibility determinations." *Bank of America, NA v Fidelity Nat't Title Ins Co*, 316 Mich App 480, 512; 892 NW2d 467 (2016) (citations omitted). Accordingly, it is for a jury to decide which expert to believe based on their testimony and the medical records.

Further, plaintiff has testified that his back pain and limitation significantly worsened after the accident, which was consistently documented in his statements to medical providers. Based on their examinations and findings, plaintiff's physicians directed him not to return to work and to undergo multiple treatment modalities including spinal steroid injections. There is evidence supporting defendants' position that plaintiff did not incur a serious impairment from the accident. But this conflicting evidence presents a question of fact for the jury to resolve. See *id*. at 513 ("[C]ausation is generally a question for the trier of fact . . . .").

Because the trial court granted defendants' summary disposition on the basis of causation, the trial court did not address whether there were questions of fact as to whether plaintiff's impairment satisfied the statutory definition of serious impairment. "Serious impairment of body function" is defined as "an objectively manifested impairment of an

important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). "On its face, the statutory language provides three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

We conclude that there are material questions of fact precluding a court from deciding the threshold-injury question as a matter of law. First, an objectively manifested impairment is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. Plaintiff's medical imaging and his reduced range of motion are objective manifestations of his impairment. The surveillance footage of plaintiff is evidence for the defense. But viewing the evidence as a whole, and in a light most favorable to plaintiff, there is a question of fact as to whether he suffered an objectively manifested impairment.

Second, the parties do not dispute that the use of one's back is an important body function. Indeed, we have held "that movement of one's back is an important body function." *Shaw v Martin*, 155 Mich App 89, 96; 399 NW2d 450 (1986). Finally, "[d]etermining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *McCormick*, 487 Mich at 202. "The statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*. Plaintiff testified that he has been unable to return to work following the accident, and his physicians issued certifications of work disability. Dr. Stephens, defendants' expert, opined that plaintiff is capable of working a sedentary or clerical job, the implication being that plaintiff can no longer perform the labor-intensive work he had before the accident. Whether plaintiff can no longer work as a laborer is relevant to whether his impairment has affected his general ability to lead a normal life. See *id*. at 218 (holding that the plaintiff's impairment affected his general ability to lead a normal life when "his capacity to work, the central part of his pre-incident 'normal life,' was affected.").

In sum, there are questions of material fact regarding the cause of plaintiff's impairment, as well as the nature and extent of that impairment. The trial court erred in determining as a matter of law that plaintiff did not satisfy the threshold injury to pursue a tort action. Because there are questions of fact regarding the cause of plaintiff's injury, the trial court also erred in granting the City summary disposition of plaintiff's claim for no-fault benefits.[4] See MCL 500.3114(2) (providing generally that "[a] person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers

---

[4] Defendants argued that plaintiff's claim for personal protection insurance benefits was barred due to fraudulent representation under *Bahri v IDS Prop Casualty Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014). The trial court correctly ruled that *Bahri* did not apply because there is no insurance contract between plaintiff and the City. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 653; 899 NW2d 744 (2017).

shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle.").

## B. NEGLIGENCE

Defendants argue that we can nonetheless affirm the trial court on the grounds of governmental immunity because plaintiff has not shown negligence or gross negligence. It is unclear whether the trial court definitively found that plaintiff failed to produce evidence that the actions of either bus driver was grossly negligent. In any event, appellees can argue alternative grounds for affirmance without filing a cross appeal. *Vandenberg v Vandenberg*, 253 Mich App 658, 663; 660 NW2d 341 (2002).

Governmental agencies are immune from tort liability when engaged in a governmental function unless a stated exception applies. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 327; 869 NW2d 635 (2015). The motor-vehicle exception to governmental immunity provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. Accordingly, to prevail against the City under the motor-vehicle exception, plaintiff need only to prove that one of the bus drivers acted negligently. And at the summary disposition stage, plaintiff need only present sufficient evidence to create a question of fact.

There is clearly a question of fact as to the negligence of the driver who pulled out in front of Brothern. Indeed, all the evidence supports the view that this driver cut off Brothern without signaling and caused the incident. Thus, the City was not entitled to summary disposition as to plaintiff's claim arising out of that driver's actions. For similar reasons, we conclude that plaintiff's claim against the unnamed driver individually on the grounds of gross negligence was improperly dismissed. To hold an individual governmental employee liable plaintiff must prove gross negligence. MCL 691.1407(2)(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Evidence supports the conclusion that the unidentified driver pulled a large city bus into an occupied traffic lane without signaling. Under the circumstances, a reasonable jury could find that such conduct constitutes a substantial lack of concern for whether injury results, i.e., gross negligence.

We agree with defendants, however, that the evidence does not establish a question of fact as to whether Brothern was negligent or at fault for the accident "Absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 437; 824 NW2d 318 (2012). The undisputed evidence established that Brothern stopped the bus to avoid a collision with the bus that cut her off. Thus, Brothern is entitled to individual governmental

immunity[5] and the City is entitled to summary disposition of the motor-vehicle exception claim with respect to Brothern.[6]

In sum, we affirm summary disposition as to Brothern and to the City insofar as its liability would be predicated on negligence or gross negligence by Brothern. We reverse the grant of summary disposition to the City for liability based on the negligence of the unnamed driver of the other bus. We also reverse the grant of summary disposition to the unidentified driver. We remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[5] Because there is no evidence to show that Brothern was negligent, it follows that there is no evidence that her actions constituted gross negligence. See MCL 691.1407(2)(c).

[6] Given our conclusion that Brothern was not negligent as a matter of law, the law-of-the-case doctrine precludes the remaining defendants as well as plaintiff from arguing before the trial court and jury that Brothern was negligent. See *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013) ("The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue.") (quotation marks and citation omitted).